JARVIS C. PERRY, and others, in equity,

*vs.*

ROCKLAND AND ROCKPORT LIME COMPANY.

Knox.     Opinion September 21, 1900.

*Lease.    Renewal.    Landlord and Tenant.*

Plaintiffs had a lease of a quarry for one year from April 16, 1898, with the privilege to renew the same for one, two, three, four, five, six or seven years.

This provision gave the plaintiffs an election to renew the lease for any one of the periods named, but it was an election to be exercised once for all. When

once exercised the right would be exhausted, and no second election could be made. To be effective, the election must be made during, or at the expiration of, the term granted in the lease.

No election was made within that time.

After the expiration of the year granted by the lease, plaintiffs held over without objection from the then owners of the quarry, and nine months thereafter gave notice to extend the lease for seven years.

*Held;* that this notice was ineffectual because not given in time, and that such holding over could not be regarded as an election to hold for seven years.

*Held;* also, that after the expiration of the year's term granted in the lease, plaintiffs were tenants at will, and that that tenancy was determined by the conveyances of title to the quarry to the defendant in January and March 1900.

The defendant never having recognized the plaintiffs as its tenant, their possession of the mine is without right.

ON REPORT.

This was a bill in equity, heard on bill, answer and proofs to compel the defendant, who is the present owner of a lime quarry, known as the Blackington farm and quarries, in Thomaston, to make, execute, acknowledge and deliver to the plaintiffs a lease of the same for the term ending April 16, 1906.

The facts appear in the opinion.

*H. M. Heath and C. L. Andrews; D. N. Mortland and M. A. Johnson,* for plaintiffs.

Cases of a present demise for the original term and the optional period, with a distinct ruling that no new lease was necessary to continue the term: *Sweetser* v. *McKenney,* 65 Maine 225; "for five years and as much longer as the lessee desires". *Holley* v. *Young,* 66 Maine, 520, for one year and "we further agree to lease, etc., at the price and conditions named as long as he wishes to occupy the premises." *Harris* v. *Howes,* 75 Maine, 436; lease for five years with option in lessee to continue the lease for five years after that date. *Willoughby* v. *Atkinson Co.,* 93 Maine, 185, a lease for three years "with the privilege at the end of the said term of re-leasing for a term of ten years or any part thereof at the same yearly rental." Language equivalent to that in our lease. *Kramer* v. *Cook,* 7 Gray, 550; "to hold for the term of three years . . . . and at the election of the lessee for a further

term of two years." *Atlantic Nat. Bank* v. *Demmon*, 139 Mass. 420. Lease for the term of one year with the privilege of two years more at the option of the lessee. *Stone* v. *St. Louis Stamping Co.*, 155 Mass. 267, for one year with clause, "it is further agreed that this lease may be extended for two years by the lessees giving thirty days' notice of such intention, etc." *Kimball* v. *Cross*, 136 Mass. 300, lease for one year with the privilege of continuing five years. *Chretien* v. *Doney*, 1 N. Y. 419, a lease for one year, "B to have the privilege to have the premises for one year, one month and twenty days longer, etc." *House* v. *Burr*, 24 Barb. 525, a lease for two years "with the privilege of two years more if desired." *Austin* v. *Stevens*, 38 Hun, 41, lease for one year "with the privilege of a further term of one, two and three years." *Terstegge* v. *First German Benevolent Society*, 92 Ind. 82, (47 Am. Rep. 135), for five years "with the privilege of five years more." *Montgomery* v. *Commissioners*, 76 Ind. 362, (40 Am. Rep. 250), lease for three years "with the privilege of keeping them two years longer upon the same terms at the option of the lessee." *Delashman* v. *Berry*, 20 Mich. 292, (4 Am. Rep. 392), one year "with the privilege of having the same for three years at the same rent and at the option of the lessee." *Clarke* v. *Merrill*, 51 N. H. 415, "five years from and after October 17, 1865, with the right to extend this lease five years longer if the lessee shall so elect at the expiration of said term." *McBrier* v. *Marshall*, 126 Penn. St. 396, for five years "with the privilege of having said lease renewed for the term of five years." A parallel case. *Falley* v. *Giles*, 29 Ind. 114, a lease for the term of two years with the further privilege to the lessee to hold the premises upon the same terms for the additional term of one, two or three years at the election of the lessee. *Lyons* v. *Osborn*, 45 Kans. 650, the privilege of continuing this lease." *Hughes* v. *Windpfennig*, 10 Ind. App. 122, "with the privilege of renting the same for three years longer." *Schroeder* v. *Gememder*, 10 Nev. 355, "with the privilege of two more." *Fleischner* v. *Citizens' Investment Co.*, 25 Oreg. 119, "optional with the lessees to renew the same for two years." Parallel with our language. *Pickard*

v. *Kleis*, 56 Mich. 604, "with the privilege of three." *Chandler*
v. *McGinning*, 8 Kans. App. 421, "with the privilege of exten-
sion not to exceed one year." Other similar cases are: *Ins. Co.*
v. *Nat. Bank*, 71 Mo. 60 ; *Hobbs* v. *Balony*, 86 Md. 68 ; *Orton* v.
*Noonan*, 27 Wisc. 286 ; *Bradley* v. *Slater*, 50 Neb. 682 ; *Tracy* v.
*Albany Exchange Co.*, 7 N. Y. 472, (57 Am. Dec. 538) ; *Hall* v.
*Spaulding*, 42 N. H. 259. In *Ranlet* v. *Cook*, 44 N. H. 512, (84
Am. Dec. 92), the court went further. The lease was for a term
of ten years with an agreement that the lessor would at the expira-
tion of that time renew the lease for a further term of ten years.
Held, that no new lease was necessary. In *Livingston* v. *Kilmback*,
10 Johns. 336, held that an instrument containing words of a present
demise will amount to a lease though it provide for a future lease ;
this would be deemed a covenant for future assurance. Wood on
Landlord & Tenant, p. 678, states the rule : "When a tenant by
the terms of the lease has an option to remain for a longer period
such an optional term is not a new demise, but a continuation of
the old one." The principle running through this long line of
cases was foreshadowed in the early case of *Poole* v. *Campbell*, 12
East, 168, where it was said, that a clause for a future lease does
not of itself necessarily intend that the instrument must be only an
agreement for a lease if the intention of the parties appear to be
otherwise. But *Holley* v. *Young*, 66 Maine, 520, since approved
and followed in *Harris* v. *Howes*, supra, and *Willoughby* v. *Atkin-
son Co.*, supra, should set the question at rest.

In all of the cases above cited, the lease in each case being held
to be a present demise for the original term and the optional term,
it was held that the election of the tenant to exercise his option
was the only act necessary to continue the term, and that relief in
equity was not necessary.

The rule of construction seems to be unbroken that where the
privilege of renewal is given wholly to the lessee, to be exercised
by the simple fact and act of election, the lease is a present demise
for the optional term and no new lease is necessary. This lease
stipulated for no notice of any kind and fixed no time when the
election should be made.

Other cases holding continued occupation under a renewal privilege and payment of rent to be, if unexplained, sufficient evidence of waiver by lessor of performance of stipulation to elect at a given time agreed and a continuation of the term are: *Myers* v. *Silljaks*, 58 Md. 321; *Jones* v. *James*, 4 Tex. App. 311; *Kelso* v. *Kelley*, 1 Daly, (N. Y.) 419; *Hyatt* v. *Clark*, 118 N. Y..563. The inference of fact is that lessees had exercised their privilege of renewal. Settlement of accounts and acceptance of rent was a waiver of all cause of forfeiture therefor accruing and a waiver of performance of the duty of election at any particular time. See *Ingle* v. *Wallach*, 1 Wall. 61.

The right to renew the lease for seven years determinable at the end of one, two, three, four, five or six years at the option of the lessees: *Doe* v. *Dixon*, 9 East, 14; *Dann* v. *Spurrier*, 3 B. & P. 399; *Price* v. *Dyer*, 17 Ves. 363; *Powell* v. *Smith*, 14 L. R. Eq. 85; *Hersey* v. *Giblett*, 18 Beav. 174. The right to elect was suspended until exercised in fact. Right seasonably exercised by holding over and paying rent. As stated in *Franklin Land Co.* v. *Card*, 84 Maine, 528, a tenant under a written lease, holding over, is not a tenant at will where the lease clothes him with superior rights. In the case at bar, the lessees held over under their contract. *Moss* v. *Barton*, 1 L. R. Eq. p. 476; *Buckland* v. *Papillon*, 2 L. R. Ch. 67.

That the right to elect between periods was a continuing right, should follow from the principle that by holding over under a renewal right and paying rent under the terms of the lease all the rights of the lease remain until exercised. At common law, payment and receipt of rent implied a continuation of the same rights as the parties had under the old lease. *Schuyler* v. *Smith*, 51 N. Y. 309; *Clarke* v. *Howland*, 85 N. Y. 204. A fortiori, when the rent is paid and received under a contract privilege of renewal.

*Renoud* v. *Daskam*, 34 Conn. 512, simply decides that the true construction of the agreement is that the election for another term was to be exercised on or before the expiration of the term. *Thiebaud* v. *First Nat. Bank*, 42 Ind. 212.

Time not of essence, substantial compliance sufficient: *Reed* v.

*St. John*, 2 Daly, (N. Y.) 213.    Specific performance decreed: *Cunningham* v. *Pattee*, 99 Mass. 248; *Biddler* v. *McDonough*, 15 Mo. App. 540; *Arnot* v. *Alexander*, 44 Mo. 25, (100 Am. Dec. 252, and note).

Treating the contract as subsisting, after the time fixed for completion, as by claiming rent under the agreement, waives the delay. *Hudson* v. *Bartram*, 3 Madd. 440; *Comber* v. *Hackett*, 6 Wisc. 323, (70 Am. Dec. 467); *Clark* v. *Jones*, 1 Denio, 516, (43 Am. Dec. 706).

Specific performance is always decreed where the delay in performing conditions is excused by the act of the other party. *Hull* v. *Noble*, 40 Maine 459.    Parties by conduct may waive time of performing conditions. *Chamberlain* v. *Black*, 55 Maine, 87.

*H. B. Cleaves; J. H. and J. H. Drummond, Jr.; Clarence Hale; C. E. and A. S. Littlefield*, for defendant.

SITTING:  WISWELL, C. J., EMERY, HASKELL, WHITEHOUSE, STROUT, FOGLER, JJ.

STROUT, J.   On April 16th, 1898, the then owners of a lime-rock quarry, leased a portion of it to the plaintiffs for the term of one year from that date.   The rights of the parties to this suit depend upon the clause in the lease, which reads:—"The term of this lease shall be one year from the sixteenth day of April, A. D. 1898, with the privilege to the said Perry Brothers of renewing the same on the same terms for one, two, three, four, five, six or seven years additional."

Neither during the term of one year, nor at its termination, did the plaintiffs give any notice to the lessors of an intention to renew, or continue occupancy of the quarry, for either of the periods as to which they had an election.   But they did in fact remain in possession thereafter, to which lessors made no objection.   Shortly before the expiration of the year's term, plaintiffs removed to this quarry and set up a boiler in place of one before used.   The rent reserved was four cents net stumpage per cask for all good stock quarried, and was payable on the first day of January each year.

Rent has been paid to the first day of January, 1900, to the then owners. In May, 1899, the title to three-fourths of the quarry became vested in William T. Cobb, trustee, who by his deeds of June 7th and June 26th, 1899, conveyed it by quitclaim to the Penobscot Bay Manufacturing Company, which company conveyed it by warranty deed to the defendant on January 18th 1900. And on the fifth day of March, 1900, the remaining one-fourth was conveyed to the defendant.

The deeds to Cobb contained the provision: "This conveyance is subject to a lease of a portion of said quarry and real estate from this grantor to Perry Brothers, dated April 16th, 1898, and all right, title and interest in and to said lease, together with the rentals therefrom accruing after June 1, 1899, are hereby assigned and transferred to the said Cobb, as trustee." A similar provision is contained in the deeds from Cobb to the Penobscot Bay Manufacturing Company. In the deed from that company to the defendant is the clause:—"And also subject to any existing rights under a writing or lease to Perry Brothers, dated April 16, 1898, and all right, title and interest of the said Penobscot Bay Manufacturing Company in, to, or under and by virtue of said writing or lease, together with the rentals hereafter accruing therefrom, are hereby assigned, set over, transferred and conveyed to the grantee." No similar provision was contained in the deed of one-fourth from Frohock and others.

The defendants therefore must be regarded as taking title with notice of whatever rights, if any, plaintiffs then had, but their rights were not thereby enlarged.

Under the lease, plaintiffs had the right to renew or extend the lease for one, two, three, four five, six or seven years at their option. They had one right of election and only one, to be exercised by the will of the plaintiffs communicated to the lessors or the then owners of the reversion. *Cunningham* v. *Pattee*, 99 Mass. 252. Good faith, fair dealing, as well as the law, required that the election should be made during the original term of the lease, or at its expiration. *Renaud* v. *Daskam*, 34 Conn. 512; *Thiebaud* v. *First Nat. Bank*, 42 Ind. 222; *Darling* v. *Hoban*, 53 Mich. 599; *Shamp* v. *White*, 106 Cal. 221.

Notwithstanding the fact that, shortly before the expiration of the specific term of the lease, plaintiffs placed in the quarry another boiler, the evidence satisfies us that neither at that time, nor at the expiration of the year, had the plaintiffs arrived at the conclu-sion to have their term extended for any definite time. ) The matter appears not then to have passed beyond the experimental stage. Benjamin C. Perry, one of the plaintiffs, says that, at about the time he set up the horizontal boiler, which he places at the 13th or 14th of April, 1899, McNamara, one of the original lessors and then part owner of the quarry, said to him "it looks as though you had come to stay," and that he does not remember what reply he made. McNamara says that he asked Perry what he was doing, and he answered: "I guess I have come to stay with you. I am going to set up this larger boiler." This answer is not such as would be expected, if at that time Perry had decided to take an extension of the lease for one or more years. It is more consonant with the idea of awaiting results before making an election. /

Nine months after the expiration of the year's term in the lease, plaintiffs notified defendant in writing that they had elected to continue the lease, but not specifying for what term. Enclosed with this notice was draft of a lease for seven years, which plaintiffs asked to have executed. Defendant declined to execute the proposed lease, and distinctly claimed that plaintiffs' option terminated at the end of the first year; and that plaintiffs having failed to exercise their option, their right had expired, and claimed possession of the mine on April 16th, 1900. This notice of the exercise of plaintiffs' option was too late. The term of the lease had expired. Plaintiffs had failed to exercise seasonably their option, and the right to do so had terminated, yet plaintiffs remained in possession and were not ejected by the then owners, as they might have been, and rent was paid to the then owners and accepted by them until January 1st, 1900. No rent has been paid to or accepted by defendant.

It is strenuously argued that by thus holding over by consent of the reversioner, the plaintiffs had exercised their election and perfected their right to an extended term for the extreme period of

seven years. The cases cited do not sustain such broad claim. In *Kramer* v. *Cook*, 7 Gray 550, the lease gave an election to lessee to extend for a further definite term at an increased rental. The tenant held over and paid two quarters rent at the increased rate. This was rightly held to justify the inference of election. In *Hersey* v. *Giblett*, 18 Beavan, 174, Hughes agreed to let and Hersey to take a house "as a yearly tenant," and "should Hersey wish for a lease of the premises, Hughes will grant the same for seven, fourteen or twenty-one years." Hersey occupied for seven years, and then called for a lease, and filed a bill for specific performance. It was held that the contract created a tenancy from year to year, with an option to the lessee to ask for a lease from the beginning for twenty-one years, determinable at his option for seven or fourteen.

In some jurisdictions it is held that, where the lease authorized a renewal or extension for a definite term, holding over by consent amounts to an election to hold for the extended term. So held in *Terstegge* v. *First German Ben. Society*, 92 Ind. 82; *Delashman* v. *Berry*, 20 Mich. 292; *Insurance & Law Building Co.* v. *Missouri Bank*, 71 Mo. 58; *McBrier* v. *Marshall*, 126 Pa. St. 390. But the Indiana court held in *Whetstone* v. *Davis*, 34 Ind. 510, and *Folley* v. *Giles*, 29 Ind. 114, that where the lease provided for a term of one year, with the privilege of the premises for two or three years, holding over after the first year operated only as an election to hold for one year. In *Buckland* v. *Papillon*, 2 Law Reports, Chancery Appeals, 67, there was an agreement to let certain premises for three years, and also when called upon by the tenant to grant him a lease for three years, seven years or the whole term. Under that agreement it was held that the option was not gone at the end of the three years. It could hardly have been held otherwise. Numerous cases are cited by counsel, to which we do not specifically refer, as they afford no additional aid in the solution of the question involved here.

The insuperable difficulty in this case is, that the option to extend the lease was not for a definite period, but for any number of years not exceeding seven which plaintiff should desire. If the holding

over was evidence of an election, for how long a term was it? Suppose within the second year the tenant had vacated, could the landlord recover rent for the seven years? Or would the tenant be allowed to say he elected to hold for one year only?

Some courts make a distinction between a right to renew a lease, and the privilege of extension—treating the former as a covenant, requiring a new lease, and the latter, if the option is exercised, as a holding under the original demise. In this state, such distinction is not regarded; in either case, the additional term is treated as arising from the original demise. *Willoughby* v. *Atkinson Co.*, 93 Maine, 186.

At common làw under a lease for a year or a term of years, holding over by the tenant, by consent of landlord, created a tenancy from year to year, and mere holding over without consent, a tenancy at sufferance. But under our statutes, holding over after expiration of the term creates a tenancy at will. *Franklin Land Co.* v. *Card*, 84 Maine, 532.

*Kendall* v. *Moore*, 30 Maine, 330, was a case where under a lease for a year, the tenant held over about six months and paid one quarter's rent. The landlord claimed rent for the entire year, but the court held that the lessee was tenant at will, and not liable for rent beyond the time of his occupancy.

The plaintiffs in this case failed to make seasonably an election to have the lease extended, and the term therefore ended on April 16th, 1899. Thereafterward they held the premises as tenant at will to the then owners. The conveyances of title to the defendant in January and March, 1900, terminated their tenancy and all right of possession. *Seavey* v. *Cloudman*, 90 Maine, 536.

Defendant has never recognized the plaintiffs as its tenant. Their holding therefore is without right.

*Bill dismissed with costs.*