NORFOLK NATIONAL BANK, APPELLEE, V. JOHN F. FLYNN ET AL., APPELLANTS, AND NEW YORK LIFE INSURANCE COMPANY, APPELLEE.

FILED MARCH 8, 1899.   No. 8748.

Life Insurance: ASSIGNMENT OF POLICY: EVIDENCE. The evidence in this case examined, and *held* insufficient to show an assignment of a policy of life insurance or of rights conferred by its provisions.

APPEAL from the district court of Douglas county. Heard below before POWELL, J. *Reversed.*

*George L. Whitham,* for appellants.

*George E. Pritchett* and *James H. McIntosh, contra.*

RYAN, C.

The Norfolk National Bank filed its petition in the district court of Douglas county, wherein it prayed that a

policy of insurance issued by the New York Life Insur-
ance Company, one defendant, on the life of John F.
Flynn, another defendant, might be decreed the property
of plaintiff, who, as assignee of such policy as it was al-
leged, was entitled to be subrogated to the rights of Hon-
nora Flynn, and that the defendant insurance company
might be restrained by injunction from paying to the
Flynns anything on account of said policy. This policy
was dated August 4, 1879. By its terms its tontine divi-
dend period was to be completed August 4, 1894, after
which period the accumulations were secured to Honnora
Flynn in either one of five different optional methods
named. Of these the third was "To withdraw the entire
equity,—i. e. the accumulations that belong to this policy,
—in cash." By its petition plaintiff alleged that the pol-
icy had been assigned to it as security for the payment of
a promissory note owing to plaintiff by John F. Flynn;
that said note had never been paid; that Flynn had neg-
lected and refused to pay premiums as they fell due; that
payment of these had been made by plaintiff; and that
within the time fixed by the terms of the policy for mak-
ing such election plaintiff, as assignee of the policy, had
notified the insurance company that plaintiff elected to
receive the benefit accruing August 4, 1894, under the
third subdivision of said policy, to-wit, "To withdraw the
entire equity—i. e. the accumulations that belong to this
policy." There was a decree as prayed, and the accumu-
lations above referred to having been found to be equal
to $634.18, the insurance company was required to pay
to plaintiff the said sum, to be applied on the indebted-
ness due to it from John F. Flynn. It was further ad-
judged that John F. Flynn and Honnora Flynn had no
interest, right, or title in the policy, and these parties
have appealed.

There were presented by the evidence and in argument
several questions which we shall not consider, for, in our
opinion, there is at the threshold a question which, in
the view we take of it, renders unnecessary the consider-

ation of any other, and that question is whether or not the policy ever was assigned to the bank. In reference to the loan as to which plaintiff claims this policy was assigned as security, Mr. Bucholz, plaintiff's cashier, testified that about May 14, 1888, John F. Flynn wanted to borrow $1,000 and offered to give the policy as collateral security, and that it was finally understood that Flynn might bring it down and the bank would make the loan; that on that day Flynn signed the note and got $1,000 then or soon afterward; that a few days after the date of the note Flynn brought the policy to the bank and left it there, promising to come in within a few days and fix up the arrangement. The cashier testified that at the time he took the policy he did not understand that it was necessary for Honnora Flynn to assign it, and that he never spoke to her about doing so. There was no evidence tending to show that Mrs. Flynn ever assigned the policy herself; indeed, the testimony of the president of the bank is that when he asked Mrs. Flynn to assign it, which was after the maturity of the $1,000 note above referred to, she refused to make the assignment. There was no evidence that John F. Flynn was specially authorized to assign the policy as agent for his wife, and the only proof of general agency to be found in the record is the following question propounded to the cashier and his answer thereto: "Q. What do you know, if anything, with reference to her husband acting as her agent generally in her matters,—in business matters? A. I never knew that she did any business for herself. He always did the business." There was never any assignment by Mr. Flynn. His testimony was to the effect that the policy was left at the bank simply for safe-keeping. As the district court found in favor of the bank, we shall assume that the transaction as described by the cashier was correctly described, and therefore that the note was first made and that the money was paid then or a few days afterward when Mr. Flynn deposited the policy as collateral security. We have already shown that the right

of election of Mrs. Flynn under the policy could not be
exercised until more than six years after the loan was
made. This loan was payable in ninety days. It was not
then paid, but it has been renewed and has not yet been
paid. While the bank had the policy in its possession
it paid three of the annual premiums as they fell due
thereon, but there was no notice to Mrs. Flynn that these
ought to be met, though there is evidence that such notice
was given to Mr. Flynn. Mrs. Flynn, in her testimony,
denied that she authorized her husband to assign, trans-
fer, or deposit the policy as security. Her testimony was
that, as she understood it, her husband, John F. Flynn,
took the policy to the bank to consult the president of
the bank, who was a lawyer, with reference to the valid-
ity of a renewal of it after it had once lapsed; that her
husband explained afterward that he had left it at the
bank for safe-keeping, and that she supposed these state-
ments were true. This policy was for $2,500. It was pay-
able at the death of John F. Flynn to his wife, Honnora
Flynn, if at that time she should be living, otherwise to
the Flynn children, of whom there were five in number.
This policy had been in existence almost nine years,
when, as alleged, it was deposited with the bank as col-
lateral security for a debt owing by John F. Flynn. None
of the parties for whose benefit it had been issued and
maintained was aware of this alleged disposition of it.
Upon the death of the insured it would at any time have
furnished to his widow and children a means of subsist-
ence to the extent of $2,500. The bank, by virtue of its
mere possession of this policy, assumed to exercise the
rights, not of John F. Flynn, but of Honnora Flynn, and
thereunder, in consideration of receiving $634.18, under-
took to surrender this policy with all its possibilities of
protection to Mrs. Flynn and her children, and this it
did because it claimed the policy had been assigned to it.
The question of this assignment is one of fact, and we can
find no evidence of an assignment authorized or executed
by Mrs. Flynn. The attempt of the bank to deprive her of

the benefit of this policy without her consent was an attempted wrong, and upon it can be based no just claim for compensation or consideration because of premiums advanced to carry the policy until its benefits could be commuted to a cash payment to the bank. On the face of it such a policy was not intended as a mere accumulation of savings. It was a judicious provision for his family in event of the death of the insured. To deprive this wife and mother of this provision there should have been at least acquiescence on her part in the alleged assignment; and, in some way, there should have been established the right, in her stead, to deprive her and her children of the benefits of the policy upon the death of the head of the family. There was not sufficient evidence to meet either of these requirements, and the judgment of the district court is reversed and the cause is remanded for further proceedings.

REVERSED AND REMANDED.