ST. LOUIS & S. F. R. CO. v. DUKE.

(Circuit Court of Appeals, Eighth Circuit. November 27, 1911.)

No. 3,425.

1. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—RAILROADS—DERAILMENT.

In an action for death of a railroad employé by derailment, evidence *held* to authorize submission to the jury of the issues of alleged negligence in the operation of the train at an excessive speed and of the defective character of the ties by which the rails at the place of the accident were sustained.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 286.*]

2. APPEAL AND ERROR (§ 260*)—RULINGS ON EVIDENCE—NECESSITY OF EXCEPTION.

A ruling on the admissibility of evidence cannot be reviewed where no exception was taken at the trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1503–1515; Dec. Dig. § 260.*]

3. MASTER AND SERVANT (§ 270*)—RELEVANCY.

In an action for death of a railroad employé by the derailment of a train, questions asked a conductor of one of defendant's trains as to the time his and other trains on defendant's road were due at B., where the accident occurred, and nearby stations, at or about the time of the accident, were admissible to show that there was some pressing need of greater speed than usual in the operation of the train which was wrecked in order to make its time at a station beyond B., and clear the track for other trains which had the right of way.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 270.*]

4. APPEAL AND ERROR (§ 230*)—RECEPTION OF EVIDENCE—EXCEPTIONS—TIME.

Exception to the admission of evidence is unavailable where no objection was made to the question until after it was answered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 183–190, 680–682; Dec. Dig. § 230;* Trial, Cent. Dig. §§ 183–190, 680–682.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. APPEAL AND ERROR (§ 1051*)—IMPROPER EVIDENCE—ADMISSION—REVIEW.
Admission of improper evidence over objection to establish facts proved by other evidence, introduced without objection, is harmless error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

6. DEATH (§ 104*)—DAMAGES—ELEMENTS.
In an action for alleged wrongful death of a husband and father, an instruction authorizing the jury to consider, in determining the amount of damages, the care, attention, instruction, and training which one of decedent's disposition and character, as disclosed by the evidence, might reasonably be expected to give his children during their minority, was proper within the rule that an allowance can be made only for the actual pecuniary loss resulting to the widow and children occasioned by the decedent's death.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 142–148; Dec. Dig. § 104.*]

In Error to the Circuit Court of the United States for the Western District of Arkansas.

Action by Mrs. Clyde Duke, as administratrix of Walter Duke, against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff and defendant brings error. Affirmed.

See, also, 172 Fed. 684.

B. R. Davidson (W. F. Evans and E. T. Miller, on the brief), for plaintiff in error.

Sam R. Chew, for defendant in error.

Before ADAMS and SMITH, Circuit Judges, and AMIDON, District Judge.

ADAMS, Circuit Judge. This action by the administratrix of the estate of Walter Duke against the railroad company suing for herself as widow and for her minor children resulted in a judgment for damages occasioned by the death of her husband while in the employ of the company as brakeman and actually engaged in the transportation of interstate commerce. To reverse this judgment error is prosecuted.

The constitutionality of the employer's liability act approved April 22, 1908 (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1909, p. 1171]), upon which the suit is based, is first challenged, but is not argued by counsel. They content themselves by saying the question is now under submission in the Supreme Court of the United States, and that they "will not burden this court with a further argument." We take them at their word, and hold pro forma that the act is constitutional and valid.

[1] The contention is next made that there was no substantial evidence of excessive speed or defective railroad ties which were charged in the complaint to have caused the derailment of the train which occasioned the death of plaintiff's intestate, and that, therefore, the Circuit Court erred in submitting either of those issues to the jury.

The derailment occurred at or near a station known as Bonanza, in the state of Arkansas. The train, a freight train, going in a northerly direction through Bonanza, was running on a downgrade, and

two witnesses testified was going at a speed of 50 or 55 miles per hour, and another witness that it was running faster than any other train he had ever seen on that road. There was direct evidence that the railroad ties at the place of derailment were rotten or "dotty," as the witness called it; that by the derailment spikes were drawn from the ties, rails were spread apart and torn from the track for a distance of 50 feet, and a general destruction of the cars and roadbed ensued. On the other hand, there was evidence to the effect that the train was moving at a moderate rate of speed only, and that the ties were in good condition. Much time was spent in argument by counsel for the railroad company to demonstrate that the witnesses for plaintiff were not qualified to testify concerning the rate of speed of the train, and that the evidence of defective ties was untrustworthy, and we are asked to discredit their evidence.

[2] Three witnesses testified on the first mentioned subject in behalf of the plaintiff. One certainly was shown to have had experience enough to warrant giving his opinion concerning the speed. While objection was made to the other two on the ground of inexperience no exception was taken to the action of the trial court in overruling it. Defendant, therefore, is now precluded from pressing that objection. Their evidence was received for what it was worth, and we think it corroborated the other evidence in a material and substantial way. One witness testified that the ties at the place of the accident were rotten, and their appearance after the accident was brought to the attention of the jury.

On the whole, we are unable to say there was no substantial evidence of a dangerous rate of speed or of a defective condition of the roadbed or ties. A jury heard the evidence, and under faultless instructions on both these issues found them in favor of plaintiff. Such being the case, we cannot disturb the finding.

[3] A conductor on one of the trains of the defendant company while on the stand as a witness was interrogated about the times his and other trains on the defendant's road were due, according to the schedule, at Bonanza and the nearby stations at or about the time the accident in question occurred. Questions of this kind were asked with a view of showing, as stated by counsel at the time, that there was some pressing need of greater speed than usual in the operation of the train which was wrecked, in order to make its time at Cedars, a station four or five miles north of Bonanza, and clear the track for passenger trains and others which had the right of way over the freight train in question.

Defendant's objections to these interrogatories were clearly untenable, and the court committed no error in overruling them. If perchance plaintiff was not able to make such showing as he expected to make, the testimony might, if it had been deemed of sufficient importance to warrant such action, have been taken from the jury at the request of defendant's counsel, but no such request appears to have been made.

[4] It is next contended that error was committed in permitting witness Morrison to testify concerning the rule of promotion in the

service of the defendant company. This question was put to him by counsel for plaintiff: "Q. Now as to promotion in railroad service—how is that obtained?" No objection was made to this question, but the witness answered: "That is the oldest men in service, merit and ability considered." After the answer was given, the defendant for the first time objected to the question and answer and on adverse ruling saved an exception. This practice of permitting a question to be answered without objection, and, if perchance the answer be unfavorable, to then object to both question and answer, is not proper or fair practice. It permits a party to speculate on the chances of a favorable answer before committing himself against the question.

[5] In addition to the practice which we have just condemned which characterized the whole examination on this subject of promotion, it appears that the witness had been fully examined on the subject before any objection was made. He had testified that he had what was called a preferred run and that Mr. Duke had also such a run; that the oldest man gets the run—that is, the oldest man in the service—and that it was gotten under what was called the rule of seniority. Immediately preceding the question and answer which were objected to he had said by way of explaining what he meant, as follows:

"Well. a man cannot get on the. railroad right at once and get one of these runs. We have what we call 'seniority,' wherein they have to be merited by time of service, as a brakeman."

To none of this evidence was any objection interposed. The jury had thereby been fully advised of the rule governing promotion which was later objected to and made the subject of an assignment of error. The admission of improper evidence over objection to establish facts proved by other evidence introduced without objection is harmless error. Metropolitan Street R. Co. v. Kennedy, 27 C. C. A. 136, 82 Fed. 158; Chicago G. W. R. Co. v. Price, 38 C. C. A. 239, 97 Fed. 423; Portland Gold Min. Co. v. Flaherty, 49 C. C. A. 361, 111 Fed. 312; Pennsylvania R. Co. v. Palmer, 62 C. C. A. 588, 127 Fed. 956. If, therefore, the ruling complained of was erroneous, it was without prejudice, and constitutes no reversible error.

Considerable argument was made at the bar that the trial court erred in permitting evidence to be given by plaintiff touching the cost of an annuity, but there was no exception taken to that testimony, and, of course, nothing is before us for consideration concerning the same.

[6] On the measure of damages, the Circuit Court told the jury that they might take into consideration, among other things, "the care, attention, instruction and training which one of his" (decedent's) "disposition and character as disclosed by the evidence might reasonably be expected to give his children during their minority." Defendant's counsel excepted to this, and affirmatively requested the court to declare the law to be that neither the care, attention, instruction, nor training which the father might reasonably be expected to give to the children could be considered by the jury in estimating the loss they sustained by reason of his death. The rule is that compensatory dam-

ages only can be awarded in such cases as this. The actual pecuniary loss resulting to the widow and children occasioned by the death of the father is all that can be allowed. This was emphasized by the trial court by repetition. He not only so advised the jury affirmatively, but he told them that "neither sympathy, nor bereavement, nor affection, nor love, nor devotion which might have existed between the husband and wife and children can be rightly considered as an element of damage in a case of this kind. The pecuniary loss sustained the law permits compensation for, but not for sorrow, loss of companionship, or society." Pretermitting, therefore, any mere sentimental considerations connected with parental care, instruction or training, is it true they are of no actual value in money to the children? We think not. The attention of a father in many cases may obviously save the employment of nurse, governess, teacher, or other caretaker. It was for the jury to say in the light of all the evidence concerning the character, devotion, and usefulness of the deceased to his children what would have been his pecuniary value to them in the respects under consideration if he had lived. We discover no error in the law laid down in this particular.

There are some other assignments of error which have received our careful consideration. Most of them are founded upon no exceptions taken at the trial, and therefore present nothing for review. Those that are founded upon exceptions are without merit.

The judgment is affirmed.