## GARRETT v. LOUISVILLE & N. R. CO.

(Circuit Court of Appeals, Sixth Circuit. July 17, 1912.)

No. 2,208.

**1.** COURTS (§ 37*)—FEDERAL COURTS—JURISDICTION—WAIVER.

Want of jurisdiction in a federal court of the subject-matter cannot be waived by the parties.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 147–151; Dec. Dig. § 37.*]

**2.** APPEAL AND ERROR (§ 185*)—COURTS—OBJECTIONS TO JURISDICTION.

Where, in an action for death of a brakeman employed on an interstate freight train, the declaration averred that deceased met his death while in the employ of the defendant company and while it was engaged in interstate commerce, such averments rendered the Second Employer's Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]) alone applicable, and, both parties having accepted the jurisdiction of the trial court, neither could object on appeal that the suit was improperly removed to a federal court in a district of which the defendant was not a resident.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1166–1178, 1375; Dec. Dig. § 185.*]

**3.** DEATH (§ 10*)—SURVIVAL OF ACTION—EMPLOYER'S LIABILITY ACT—DAMAGES ACCRUING TO DECEDENT.

Second Employer's Liability Act Cong. April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), provides that a carrier engaged in interstate commerce shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of death of such employé, to his or her personal representative for the benefit of the surviving widow or husband and children of such employé, and, if none, then of such employé's parents, and, if none, then to the next of kin dependent on such employé, for such injury resulting in whole or in part from the negligence of any officers, agents, etc., of the carrier. *Held*, that where a brakeman, while engaged in interstate commerce, received injuries from which he suffered great pain before he died, his right of action for such suffering did not survive to his parents, but a new and different right of action, to wit, an action for death, was created in favor of his parents or the other beneficiaries stated.

[Ed. Note.—For other cases, see Death, Dec. Dig. § 10.*]

**4.** DEATH (§ 85*)—WRONGFUL DEATH — SPECIAL DAMAGES — EMPLOYER'S LIABILITY ACT.

Second Employer's Liability Act Cong. April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), provides that in case of an injury to a person employed by an interstate carrier in such commerce, or in case of death of such employé, the carrier shall be liable to his or her personal representative for the benefit of the surviving widow or husband and children of such employé, and, if none, then to such employé's parents, and, if none, then to the next of kin dependent on such employé for such injury resulting in whole or in part from the negligence of any of the carrier's officers, agents, etc. *Held* that, in an action for an employé's wrongful *death* under such act, the beneficiaries were not entitled to recover solatium for distress of mind; their damages being limited to their pecuniary loss resulting from the employé's death.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 111; Dec. Dig. § 85.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5. DEATH (§ 77*) — WRONGFUL DEATH — RIGHTS OF BENEFICIARY — PECUNIARY INJURY.**

Decedent, a young, unmarried man, strong in physique and health, was killed as the result of injuries sustained while engaged as a brakeman on one of defendant's trains in interstate commerce. He lived with his father and mother on a farm consisting of 1,800 acres. Prior to his work on the railroad, decedent had successfully managed the farm; his father, who was 71 years of age and growing feeble, being unable to do so. When he went away to work on the railroad, he stated that he would be back to gather the corn. He did not receive wages from his father, but was in the habit of receiving money from him when he desired it. *Held*, sufficient prima facie proof that the father had a reasonable expectancy of benefit from the continuance of decedent's life, which, with proof of the value of such benefit, was susceptible of estimate of the pecuniary loss to the father and the mother, who was some eight years younger, as showing the damages they were entitled to recover for his wrongful death.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 96; Dec. Dig. § 77.*]

**6. DEATH (§ 52*)—EMPLOYER'S LIABILITY ACT—DAMAGES—PLEADING.**

Second Employer's Liability Act Cong. April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), provides that a carrier engaged in interstate commerce should be liable in damages to any person suffering injury while employed by the carrier in such commerce, but, in case of death of such employé, to his or her personal representative for the benefit of the surviving widow or husband and children, and, if none, then to the next of kin dependent on such employé, etc. *Held* that, while damages to a widow and children of an employé killed while engaged in interstate commerce might be presumed, no such presumption could be indulged with reference to other beneficiaries named in the statute, so that where the decedent left no widow or children, but left parents as his surviving next of kin and beneficiaries, a declaration for wrongful death under the statute was defective for failure to allege facts showing that they sustained pecuniary injuries by reason of his death.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 69; Dec. Dig. § 52.*]

In Error to the Circuit Court of the United States for the Middle District of Tennessee.

Action by C. W. Garrett, administrator of T. W. Lewis, Jr., against the Louisville & Nashville Railroad Company. Judgment for defendant, and plaintiff brings error. Reversed conditionally.

This action was originally brought in the circuit court of Houston county, Tenn., and on petition of the railroad company was removed to the court below. The declaration contains three counts, and in each it is alleged that "plaintiff is a citizen of the state of Kentucky, and is the administrator of T. W. Lewis, Jr., by appointment of the county court of Stewart county, Tenn."; that defendant is a corporation under the laws of the state of Kentucky; that at the time in question, September 27, 1909, defendant was engaged in commerce between the states of Kentucky and Tennessee and other states; and that deceased was on that date in the employ of the company as a brakeman on one of its freight trains, and through negligent telegraphic orders the train was brought into collision with another freight train of the company which resulted in the death of plaintiff's intestate. The alleged negligent acts are variously stated and ascribed to the company, its engineer and conductor in charge of the train, and two of its telegraph operators in sending and reading the dispatch; that in an effort to save his life by jumping from the engine on which he was at the time riding, when it was seen that collision was imminent, deceased without fault on his part was caught under the engine and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

held for six hours or more, suffering intense agony and pain from both the weight of the engine and hot water from the boiler, in consequence of which he died shortly after the engine was removed from his body. In each of the counts, it is alleged that at the time of his death deceased was 24 years of age, was strong and vigorous and of fine business qualifications and earning capacity; in the first and second counts that he left surviving him T. W. Lewis, his father, and Mrs. T. W. Lewis, his mother; in the third count that he left surviving him not only his father and mother, as stated, but also brothers and sisters, whose names are not stated. In the first and second counts it is alleged that plaintiff sues for the benefit of decedent's parents, and in the third count simply as administrator of deceased, but in each count for $50,000 damages.

In the petition for removal, it is alleged, among other things, that the railroad company was incorporated by act of the General Assembly of Kentucky, approved March 5, 1850 (Acts 1849-50, c. 382), was never incorporated under the laws of the state of Tennessee, and is an existing corporation under the laws of Kentucky; that for the sole purpose of preventing removal of the action plaintiff, although a citizen of Kentucky, sued in his official capacity as administrator; that under chapter 501 of the acts of that state of 1903 he was for the purposes of the suit a citizen of Tennessee; that this is a controversy between citizens of different states; and that the suit is brought to recover damages for alleged wrongful killing of deceased under the Second Employer's Liability Act of Congress of April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322).

The order for removal states as its basis simply that the petition with proper bond was presented before the time the railroad company was required by the laws of Tennessee or rules of court to answer or plead to the declaration. Subsequently the railroad company filed in the court below pleas of not guilty and contributory negligence, to each of which replication was made. Both parties presented evidence, and the cause was tried upon the theory that the action was based on the Second Employer's Liability Act of Congress. At the close of all the evidence, a motion to direct a verdict for defendant was granted; and the case is prosecuted here upon assignments of error.

So far as the record discloses, no motion to remand the cause to the state court was made. The act of Tennessee, upon which the railroad company founds the averment, as stated, that plaintiff below is a citizen of Tennessee, provides that whenever a nonresident of Tennessee qualifies in that state as an administrator of a person dying or leaving assets or property in the state, "for the purpose of suing and being sued he shall be treated as a citizen of this state." Acts 1903, p. 1344.

H. N. Leech, for plaintiff in error.

John B. Keeble, for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). [1, 2] We take it that no question of jurisdiction of the trial court can arise; for assuming, without deciding, that removal of the cause from the state court to the court below was not warranted upon the ground of alleged diversity of citizenship (Cincinnati, H. & D. R. Co. v. Thiebaud, 114 Fed. 918, 924, 52 C. C. A. 538 [C. C. A. 6th Cir.]; Amory v. Amory, 95 U. S. 186, 187, 24 L. Ed. 428; Continental Ins. Co. v. Rhoads, 119 U. S. 239, 240, 7 Sup. Ct. 193, 30 L. Ed. 380; McDuffie v. Montgomery [C. C.] 128 Fed. 105, 107; Acts of Tennessee 1903, c. 501, p. 1344)—a matter that the parties could not waive (Chi., B. & Q. Ry. Co. v. Willard, 220 U. S. 413, 419, 31 Sup. Ct. 460,

55 L. Ed. 521)—still the action might originally have been brought and maintained by plaintiff in a federal court (Act of Congress August 13, 1888, c. 866, § 1, 25 Stat. L. 433 [U. S. Comp. St. 1901, p. 508]; Act of Congress April 22, 1908, c. 149, § 1, 35 Stat. L. 65; Second Employer's Liability Cases, 223 U. S. 55, 56, 57, 32 Sup. Ct. 169, 56 L. Ed. 327). True, it is not distinctly alleged in the declaration that the action is based upon the Second Employer's Liability Act; but we think this effect must be given to the averments of the declaration that deceased met his death while in the employ of the company and while it was engaged in interstate commerce. Such averments rendered the federal act alone applicable, and, further, the case was tried and disposed of below upon that theory. Second Employer's Liability Cases, supra; Smith v. Detroit, T. S. L. Ry. Co. (C. C.) 175 Fed. 507; Cound v. Atchison, S. F. Ry. Co. (C. C.) 173 Fed. 531; Erie R. Co. v. White, 187 Fed. 556, 558, 109 C. C. A. 322 (C. C. A. 6th Cir.). True, also, through the removal, the suit was maintained in a federal district of which the defendant was not a resident (Smith v. Detroit, T. S. L. R. Co., 175 Fed. 508, and cases there cited); but since the parties could and did accept the jurisdiction of the court below (In re Moore, 209 U. S. 496, 505, 28 Sup. Ct. 585, 706, 52 L. Ed. 904, 14 Ann. Cas. 1164; Kreigh v. Westinghouse & Co., 214 U. S. 252, 253, 29 Sup. Ct. 619, 53 L. Ed. 984; Erie R. Co. v. Kennedy, 191 Fed. 332, 334, 112 C. C. A. 76 [C. C. A. 6th Cir.]; Hubbard v. Chicago, M. & St. P. Ry. Co. [C. C.] 176 Fed. 994, 997; Detroit Trust Co. v. Pontiac Savings Bank, 196 Fed. 29, 32 [C. C. A. 6th Cir.]), the removal cannot be and is not questioned.

We thus reach the merits of the case. The motion to direct a verdict hinged upon a construction of the act of Congress mentioned. The issue was, as the learned trial judge stated, whether the act provides for the survival of the action that accrued to the decedent before his death, or for an action to recover damages for the death. The trial court took the latter view. As we interpret the assignments of error, the issue as stated and the ruling of the court present the principal question that is open here; that is, whether this is a survival act. The errors complained of in substance concern (1) the ruling out of evidence showing the pain and suffering of deceased while held under the engine; (2) the receiving of evidence "as to the expectancy of the deceased's father and mother"; (3) the exclusion of evidence of the "pecuniary value of the life," etc.; (4) the ruling "that the declaration is insufficient to permit evidence looking to the earning capacity of the deceased." We may say in passing that the reason for this latter ruling was that, while the declaration avers in two counts that the plaintiff sues for the benefit of the parents, it fails to allege special damages. The court tendered leave to amend the declaration so as to state the damages claimed to have been sustained by the father and mother through the death of their son; but learned counsel declined to amend, stating that he would stand on his "conception of this case." The court then ruled out the evidence indicated by the assignments, which had been previously admitted subject to exception, and granted the motion to direct.

[3] Did the action that accrued to the decedent survive to his parents? There can be no doubt of the torture that deceased endured while under the engine; nor can there be any doubt that if he had survived he would have been entitled (if he recovered at all) to substantial damages for that reason and for other reasons equally obvious. That action either survived to his parents or it did not. The act provides that the carrier—

"* * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of death of such employé, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employé; and, if none, then of such employé's parents; and, if none, then of the next of kin dependent upon such employé, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents," etc.

It will be observed that the liability imposed is in damages (1) to the employé; (2) to the personal representative, for the benefit of (a) the surviving widow * * * and children, and, if none, then (b) such employé's parents, and, if none, then (c) the next of kin dependent upon such employé. The damages mentioned are allowed in favor of different classes of persons, differently related to the deceased employé. The classes vary, and the purpose would seem to follow that the damages should also vary. The damages allowed to the injured employé are but declaratory of rights existing at common law; the damages allowed to the beneficiaries specified are dependent solely on the statute. It is easy to perceive why ordinarily the widow and children would suffer damages greater than would the parents or next of kin. Indeed, the next of kin may be many in numbers, but none can recover without showing dependency. It is therefore hard to discern in this act a legislative intent to bestow the right of action so declared in favor of the injured employé upon these classes of beneficiaries alike according as one or another should happen to survive the deceased. It is true, as is claimed, that subsequently to this accident Congress by amendment enacted that "any right of action" given by the act to the person injured "shall survive to" his personal representative, for the benefit of the same classes of beneficiaries as those named in the act now in question (Act April 5, 1910, c. 143, 36 Stat. L. 291 [U. S. Comp. St. Supp. 1911, p. 1324]); but that is legislation.

In Fulgham v. Midland Valley R. Co. (C. C.) 167 Fed. 660, 663, Judge Rogers, in construing the act now in issue, after speaking of changes made in the act to the advantage of the employé, said: "But it will be observed on the other hand that the act makes no provisions for the survival of that action, so given, for an injury sustained, in the event of the death of the injured employé." While that case was reversed (Midland Valley R. Co. v. Fulgham, 181 Fed. 91, 95, 104 C. C. A. 151 [C. C. A. 8th Cir.]), yet the reason assigned for the reversal was the failure to show negligence of the company; the question of survival of action not being considered. But in St. Louis & S. F. R. Co. v. Duke, 192 Fed. 306, 309, 310, 112 C. C. A. 564, 567, 568 (C. C. A. 8th Cir.), Judge Adams, speaking for the court,

in effect denied the survival theory under the act in question here, saying:

"The rule is that compensatory damages only can be awarded in such cases as this. The actual pecuniary loss resulting to the widow and children occasioned by the death of the father is all that can be allowed."

In Walsh v. New York, N. H. & H. R. Co. (C. C.) 173 Fed. 495, the late Judge Lowell, in construing the act (following Judge Rogers' ruling), said:

" * * * We must here hold that the cause of action did not survive. * * * As the statute is in many respects loosely drawn and ambiguous, so that the intent of Congress does not always appear clearly, the court is justified in saying that this result has been reached with reluctance."

In Fithian v. St. Louis & S. F. Ry. Co. (C. C.) 188 Fed. 842, 844, in passing upon the act Judge Trieber said:

"The importance of having the relationship of the parties for whose benefit the action is brought set out is apparent from the fact that this act does not provide for the survival of the cause of action which the deceased had at the time of his death, but is a new cause of action solely for the benefit of those dependent upon the deceased, and the measure of damages is the pecuniary loss sustained by those for whose benefit the remedy is given."

See, also, Chesapeake & Ohio Ry. Co. v. Dixon, 179 U. S. 131, 135, 21 Sup. Ct. 67, 45 L. Ed. 121.

We are constrained to hold that the right of action declared in favor of the employé does not in case of his death survive; but a new and different right of action is created—an action to recover damages for the wrongful death of the employé.

[4] As regards damages, the right of action in the employé (Lewis) involved only consequences of his injury; the new right of action involves only consequences of his death. These consequences are distinct and must not be confused. For example, the employé's pains resulting from the injuries were suffered by him, not by the beneficiaries; and the new right of action furnishes the beneficiaries no solatium for their distress of mind; their damages are measured by their pecuniary loss. Hulbert v. City of Topeka (C. C.) 34 Fed. 510, 513, 514, by the late Justice Brewer; Pennsylvania Railroad Co. v. Butler, 57 Pa. 335, 338, per Judge Sharswood; Perham v. Portland Electric Co., 33 Or. 458, 463, 464, 53 Pac. 14, 24, 40 L. R. A. 799, 72 Am. St. Rep. 730. The inherent difficulty of estimating the pecuniary value of a life is, of course, universally recognized; and it is not surprising that the numerous and familiar efforts of courts to lay down rules, with a view of securing practical uniformity in results, have not brought about the end so much to be desired. The problem necessarily ends in yielding much latitude to the jury in estimating damages in such cases. Thus, in Railroad Co. v. Barron, 72 U. S. 90, 18 L. Ed. 591, appreciating the nature of the task of estimating the damages that would have accrued to the injured person had he survived (in effect denying survival of that action, 72 U. S. 105), and likewise the damages that should be accorded to the beneficiaries in case of his death, Justice Nelson said (at page 106 of 72 U. S.):

"There is difficulty in either case in getting at the pecuniary loss with precision or accuracy, more difficulty in the latter than in the former, but differing only in degree, and in both cases the result must be left to turn mainly upon the sound sense and deliberate judgment of the jury."

That case is much relied on by plaintiff. An Illinois statute was involved, and its important sections are quoted in the statement of the case. In Dist. of Col. v. Wilcox, 4 App. D. C. 119, it appears that the Barron Case was tried below before Justice Davis and Judge Drummond with a jury. The statute is still in force (Ill. Rev. Stat. of 1908, c. 70, p. 1184), except as to limit of recovery, and has frequently been construed by the Supreme Court of that state; but whether at all times in harmony with the decision in the Barron Case, or to what extent that decision may ultimately be applicable to this case, need not now be considered.[1] As we understand counsel's chief reliance upon the Barron Case, it is to show that it is not necessary to prove in this case that the parents had a legal claim on the deceased for support. That case so rules and, in connection with the evidence, ought to be an answer to the issue discussed by counsel whether recovery should be limited to nominal damages. The evidence ruled out because of failure specifically to allege damages resulting to the parents from the death impresses us as being sufficient, if believed by the jury, to justify recovery for more than nominal damages.

[5] Thus, as respects damages, there was evidence tending to show: That the father was the owner of about 1,800 acres of land and the largest farmer in his neighborhood, raising corn, tobacco, wheat, hay, live stock, etc.; that he was 71 years of age and growing feeble; that he relied on deceased as the manager of this farm; that deceased was strong in physique and health, was well educated and possessed of good business qualifications and of aptitude for all kinds of machinery, including such as is used on a farm; that when he went away to engage in railroad work he stated that he would be back to gather the corn; that he was unmarried and lived with his father and mother as one of the family; that he raised crops of his own on the farm, and while he was not in receipt of fixed wages from his father, he was in the habit of receiving money from him when he desired it. It is safe to say that prima facie this presented a reasonable expectation of benefit from the continuance of the son's life, which, with proof of the value of such benefit, was susceptible of estimate of pecuniary loss to the father, as also to the mother, who was some eight years younger than the father. As illustrative of measure of damages where parents were interested as beneficiaries, see Franklin v. South Eastern Ry. Co., 3 H. & N. 212, 214; C. & E. I. R. R. Co. v. Beaver, 199 Ill. 34, 38, 65 N. E. 144; North Pennsylvania R. R. Co. v. Kirk, 90 Pa. 17; Hutchins v. St. Paul, Minn. & Manitoba

[1] A number of the Illinois cases are referred to in Rhoads v. C. & A. R. R. Co., 227 Ill. 328, 337, 81 N. E. 371, 374 (11 L. R. A. [N. S.] 623, 10 Ann. Cas. 111), the decision in which was made "with the Barron Case in mind," and still others in the more recent case of Dukeman v. C., C., C. & St. L. R. Co., 237 Ill. 104, 86 N. E. 712. See, also, Chicago N. W. R. Co. v. Swett, Admr., 45 Ill. 197, 204, 205, 92 Am. Dec. 206, decided shortly after the Barron Case.

Ry. Co., 44 Minn. 5, 10, 46 N. W. 79. As to damages where widow and minor children were beneficiaries under the act now in question, see St. Louis & S. F. R. Co. v. Duke, 192 Fed. 309, 310, 112 C. C. A. 564. However, since the learned trial judge did not reach the point of instructing the jury, it is neither necessary nor proper as a reviewing court to attempt, in advance of a judgment on the merits, further to particularize as to evidence ruled out, or as to the elements that should be embraced in the measure of damages to be applied in the case. An example of this course may be seen in American R. R. Co. v. Birch, 224 U. S. 547, 32 Sup. Ct. 603, 56 L. Ed. 879; indeed, any other course might result in passing on matters that might never arise in the case.

[6] As to the necessity for amendment, it is to be observed, as set out in the statement, that plaintiff simply sues for the benefit of decedent's parents in the first and second counts, and as administrator in the third count. He does not allege anywhere in the declaration that the parents of the deceased suffered any pecuniary loss or injury through his death. The theory seems to have been that it was necessary to state only facts sufficient (1) to give the court jurisdiction; (2) to show the employment of the deceased and the negligence resulting in his death; (3) the names of the particular beneficiaries for whose benefit the suit is brought, and also the amount of damages sued for. It may be conceded, for present purposes, that if a widow and children had survived, and the action were maintained for their benefit, the law would presume substantial damages, and so dispense with the necessity of specific averment in that behalf. Dukeman v. C., C., C. & St. L. R. Co., 237 Ill. 109, 86 N. E. 712. In some jurisdictions even the relationship or connection of the beneficiaries is not deemed important in this respect. Pennsylvania Co. v. Coyer, Adm'x, 163 Ind. 631, 72 N. E. 875; Knife & Bar Co. v. Hathaway, 17 O. C. D. 750, 751, and cases there cited. But the decedent in this case was 24 years of age and unmarried at the time of his death, and we are convinced that the better practice is, at least as to such beneficiaries as are involved here, to require the nature of the damages claimed to have been suffered in consequence of the death to be averred. This results from the conclusion that the action which accrued to the deceased prior to his death did not survive. We have already pointed out that the third class, the "next of kin," provided for in the act, is specifically limited to such as were "dependent upon such employé." This provision at once furnishes the token for identifying the beneficiaries and prescribes the condition of recovery. Is it to be said that such identification and condition need not be averred? Since it is not uncommon experience that a son past legal majority, as well as a minor son, may be an expense to his parents, it is more consonant with the reason disclosed by the act in respect of next of kin to hold that averment of pecuniary loss or injury is likewise necessary in regard to parents, although dependence, in the sense in which the term is used in the statute with reference to next of kin, is not essential to a recovery for the benefit of parents.

In Hurst v. Detroit City Railway, 84 Mich. 539, 547, 48 N. W. 44, it was held, concerning this class of cases generally, that:

"It is necessary to a recovery in such cases that the pecuniary loss be alleged in the declaration and that some proof be introduced to establish the facts so alleged."

See cases there cited; also, Regan v. Chicago, Milwaukee & St. Paul Ry., 51 Wis. 600, 601, 8 N. W. 292; Chicago, R. I. & P. R. Co. v. Young, 58 Neb. 683, 79 N. W. 556; Norfolk Nat. Bank v. Flynn, 58 Neb. 253, 78 N. W. 505; Winnt v. I. & G. N. R. R. Co., 74 Tex. 32, 36, 11 S. W. 907, 5 L. R. A. 172; Greenwood v. King, 82 Neb. 20, 21, 116 N. W. 1128; also, L. & N. Ry. Co. v. Summers, 125 Fed. 719, 722, 60 C. C. A. 487 (C. C. A. 6th Cir.), where it was held unnecessary to allege that the beneficiaries had theretofore received pecuniary benefit from the deceased; the material question being whether they would have been likely to receive any if his life had not been cut short.

Ordinarily, it would result that the assignments should be overruled and the judgment affirmed. But we infer from the record that the opportunity given to amend was declined through counsel's misapprehension of the trial court's statements touching the effect of averment in relation to pecuniary benefits and damages. The order therefore is that the judgment will be reversed and a new trial awarded (without costs), unless plaintiff through his counsel shall, within 60 days after the entering of this judgment, cause written notice to be filed with the clerk of this court that further opportunity to amend is declined; in that event the judgment will stand as affirmed, with costs.