# JUNE TERM 1884.

## THEODORE S. DARLING v. ELISE A. HOBAN.

*Notice of election to renew lease.*

1. Where a lease gives the lessor the right to elect at the end of the term whether or not to renew the lease, such election may be made on or before the last day of the term.

2. Notice of a landlord's election to renew a lease need not be in writing unless the lease so stipulates, so long as the lease itself contains all the terms and conditions of renewal and the tenant is in possession. Nor need a new lease be tendered, especially if the tenant has declared that he will not accept a renewal.

Error to the Superior Court of Detroit. (Chipman, J.) April 8–9.—June 4.

ASSUMPSIT. Defendant brings error. Reversed.

*Barbour & Rexford* and *Don M. Dickinson* for appellant. Elections to renew leases are evidenced in various ways: *Ronlet v. Cook* 44 N. H. 512; *Thomas v. Frost* 29 Mich. 336; *Thiebaud v. First Nat. Bk.* 42 Ind. 212; *Kramer v. Cook* 7 Gray 550; leases like that in this case in all essentials are considered in *Pike v. Butler* 4 N. Y. 360; *Finkelmeier v. Bates* 92 N. Y. 177; *Peoples Bank v. Mitchell* 73 N. Y. 406; *Pearce v. Colden* 8 Barb. 522; *Rutgers v. Hunter* 6 Johns. Ch. 215; Taylor's L. & T. § 335; tender need not be made if reasonably certain to be refused: *Kaufman v. Lee* 106 U. S. 196; *Atwood v. Weems* 99 U. S. 183; *Bennett v. Hunter* 9 Wall. 326; *Jackson v. Jacob* 3 Bing. N. C. 869; *Tacey v. Irwin* 18 Wall. 549; *Hampton v. Speckenagle* 9 S. & R. 212; *Dorsey v. Barbee* Litt. Select Cases (Ky.) 204; *Lynch v. Postlethwaite* 7 Martin (La.) 69; *Seaward v. Willock* 5 East 202; *Poole v. Mill* 6 M. & W. 835; *Doogood v. Rose* 9 C. B. 131; *Wilmot v. Wilkinson* 6 B. & C. 506;

*Lovlock v. Franklyn* 8 Q. B. 371; telegrams are on the same footing as letters, and are sufficient to take a contract out of the Statute of Frauds: Scott & Jarnagan on Tel. §§ 331–2–3; *Prosser v. Henderson* 20 U. C. (Q. B.) 483; *Taylor v. Steamboat Co.* 20 Mo. 254; 1 Add. on Cont. (Am. ed.) 45; Benj. on Sales § 271.

*Henry C. Wisner* for appellee.

SHERWOOD, J. Plaintiff brought suit to recover the value of a building erected by him under the provisions of a lease made May 1, 1877, with defendant, for the term of five years next ensuing, at a yearly rent of $4100. Said lease contained the following clause, viz. :

" Said second party [meaning the plaintiff] is hereby permitted and agrees to erect a building to reasonably occupy the space between the buildings now on said property and the new Wayne County Savings Bank, to cost not to exceed five thousand dollars ($5000), and to be of equal height with the building now on said corner. Said first party agrees to take said building to be erected so as aforesaid by said second party at its value at the termination of said five years, said value to be determined by three appraisers, to be chosen in the usual way ; but the appraisal to be made by them shall be upon the basis of the cost of said building, not to exceed five thousand dollars when finished, and any deterioration by wear, breakage or faulty construction to be deducted therefrom ; but if such building shall not be worth cost, less such deterioration, then it shall be appraised at its then actual cash value. In case, however, said first party shall elect at the termination of said five years to renew this lease for a further term of five years, upon the same terms above stipulated, she shall be entitled, at the end of said second term, to said building so to be erected as aforesaid, and to receive from said second party, free of any charge or claim, a bill of sale thereof. Said second party also agrees that he will not assign or transfer this lease without the written assent of said first party ; and at the end of the said term shall and will peaceably and quietly leave, surrender, and yield up the buildings now on said premises unto the said party of the first part, her heirs or assigns, in as good condition as when possession is given, damages by the elements excepted."

There was no provision what notice, if any, should be

given at the end of the five years, or how it should be given, whether in writing or not. The plaintiff went into possession of the leased premises at the time the lease was made, and remained until May 1, 1882, and during said term erected a building thereon, under the agreement contained in the lease. During the term, Barbour & Rexford, a legal firm in Detroit, had acted for the defendant as her general agents in receiving her rent for the premises, and for taking charge of and renting same. On May 1, 1882, the plaintiff tendered the keys of the building to Barbour & Rexford, who refused to receive the same, and Mr. Barbour then and there gave the plaintiff verbal notice that the defendant elected to renew the lease for five years, as provided in the contract; and later in the day, after authority was obtained by telegram from defendant, Barbour & Rexford gave the plaintiff a written notice, signed by defendant, by them, to the same effect.[1]

Mrs. Hoban resided in Washington most of her time, and was there when the term expired and the notices were given.

It is admitted that Barbour & Rexford had no other authority to give these notices to the plaintiff, at the time they were given, than the telegram and the general agency above stated, given in person and contained in letters; and the record does not show that any question was made as to their authority, by the plaintiff at the time. They showed the plaintiff the telegram they had received from Mrs. Hoban on the second day of May, 1882, and the plaintiff admits having received the written notice of defendant's election that he should remain another five years; that her attorneys served the notice upon him by leaving it at his house the evening of the first day of May, and that he received it at

---

[1] The notice was as follows:

DETROIT, May 1st, 1882.

*Theodore S. Darling, Esq.*, *Detroit, Mich.*—DEAR SIR: You will please take notice that I have elected and do hereby elect to renew, for a term of five years next ensuing this date, the lease dated January 19, 1877, executed by me to Theodore S. Darling & Co., of the property situate at the northwest corner of Griswold and Congress streets, in said Detroit. Yours, etc.,

ELISE A. HOBAN, (formerly MITCHELL)
By BARBOUR & REXFORD, her attorneys.

ten o'clock in the evening. The plaintiff had never expressed any desire about remaining the second five years, until the first day of May, 1882, when he sought to surrender the premises by delivering the keys of the building to Barbour & Rexford ; and, on their refusal on that occasion to accept the surrender of the keys, plaintiff informed them he should have nothing more to do with the property, refused to renew or accept a renewal of the lease, and, after refusing to pay the rent when demanded, abandoned the property, leaving eighteen of his sub-tenants occupying different portions of the building, and, without taking any steps to have appraisers appointed until September following, brought this suit.

It is admitted that the defendant had the right of election to renew the lease, and by so doing bind the plaintiff, if done in proper time, which was on or before the last day of the term ; and this, no doubt, is the proper construction of the lease upon that subject. *Renoud v. Daskam* 34 Conn. 512 ; *Thiebaud v. Vevay Bank* 42 Ind. 212.

There was some testimony given in the case tending to show that the building for which the plaintiff claimed payment was not built wholly upon the defendant's lot, or according to the agreement relating thereto contained in the lease. It further appeared that after the plaintiff had thus left the property and refused to have anything more to do with it, or pay rent, and had given written notice to that effect to defendant, the defendant re-rented the premises to another party upon the same terms as the plaintiff had them.

Upon these facts the circuit judge charged the jury that the plaintiff was entitled to recover, and the only question for them to determine was the amount of damages he was entitled to recover ; that the term under the lease ended on the last day of April, 1882, at midnight; and that defendant should have elected on or before the first day of May following. The court also charged that it was the duty of defendant in making the election to tender to the plaintiff for his signature a new lease, embodying the terms of the old one ; and further held that Barbour & Rexford had no

authority to renew the lease or make the election; and that the telegram of defendant to them was insufficient for the purpose; that no lease was tendered, and no sufficient reason given why it was not tendered.

The court further instructed the jury that they should assess the damages of the plaintiff at the cost of the building, not to exceed $5000, less any deterioration from wear and tear or improper construction.

The court also, at the request of counsel for the defendant, submitted thirteen special questions for the jury to answer. The substance of these several questions and answers is as follows: (1) Barbour & Rexford were the general attorneys and agents for defendant in the management of her real estate in Detroit, May 1, 1882; (2) plaintiff knew this fact; (3) Barbour & Rexford served the notice to renew, on the plaintiff on May 1, 1882; (4) they also gave plaintiff verbal notice thereof on same day; (5) Barbour & Rexford sent a telegram to defendant on the first day of May, 1882, with reference to expiration of first term, and received a reply from defendant by telegram same day to renew the lease; (6) plaintiff saw the telegram to Barbour & Rexford, May 2, 1882; (7) plaintiff positively refused, after receiving all the above notices, to renew the lease, or have anything to do with the premises; (8) plaintiff's tenants were not out of the premises on May 1, 1882; (9) plaintiff's tenants were in the premises at the time of the first interview between Barbour & Rexford, on the first of May, 1882, and until the defendant leased the premises; (10) the building reasonably covers the premises where it was to be placed; (11) a part of the building erected does not stand on the premises leased; (12) the erection of the building has added to the value of the rented premises; (13) the building adds to the value of the rented premises as it is erected.

The jury returned their general verdict for the plaintiff for $4584.80. The defendant's counsel moved for judgment in her favor upon the findings, which was denied by the court, and thereupon a judgment was duly entered for the amount of the verdict for plaintiff.

The record contains the substance of all the testimony, and the case comes before us on error.

The defendant's counsel asked the court, in its charge to the jury, to give ten specific requests, (which will be found in the margin,[2]) each of which was refused by the court; and to the rulings defendant's counsel severally excepted. I think all these requests, except the fourth and tenth, were proper, state the law applicable to the facts and findings of the jury correctly, and should have been given.

The defendant's second and third assignments of error were well taken. The court charged, in substance, that the only manner in which defendant could make her election was to tender, on or before May 1, 1882, a new lease, formally made out with full covenants : that there was no evidence whatever

---

[2] (1) The relation of landlord and tenant was created by a lease between the parties, which created certain covenants between them, one of which was that Mrs. Hoban should at her election, at the expiration of the first term, buy the buildings or renew the lease for a second term of five years. The interest of Darling as tenant and of Hoban as landlord did not cease by the mere expiration of the first term, and the contract between them for the second term rested in covenant aforesaid, and required, under the statute of frauds, no new writing or new contract for a lease for the second term. All that was required at the expiration of the first term was that Mrs. Hoban should make an election. The original lease did not provide whether such election should be in writing, and it was unnecessary so to provide to make that covenant for a new lease, upon the declaration of such election, effective. The moment the election was declared by Mrs. Hoban, the contract right, enforceable by either and valid under the statute of frauds, existed for the new term. It was unnecessary for the declaration of election to be made in writing, or that the authority to make it should be in writing. If the jury believe that Barbour & Rexford were the general agents and attorneys of Mrs. Hoban in regard to this property and in the management thereof, and that Darling knew it, their oral declaration of her election on the first of May, 1882, was sufficient; or if the jury believe that Mrs. Hoban, on the first of May, did declare an election, intending so to do, to renew the lease, it was a sufficient declaration of election.

(2) If the declaration of election was made as above stated, then, under the covenant in the old lease, either party was entitled to demand or receive the execution of a formal lease. But it was unnecessary, on the first of May or for a reasonable time thereafter, for the lease to have been actually executed by Mrs. Hoban for the second term, as the original lease, in providing for an election for a second term, must not be construed as meaning that that election must be declared by the actual execution of a formal lease at the time.

(3) If the jury believe that on May 1st, 1882, and thereafter, Darling informed defendant's attorneys that he would have nothing to do with the premises, gave them to understand that he would not accept a lease for a second term, then it was unnecessary for them, or for her, to go

of a tender of renewal. The terms for the second five years were all agreed upon, reduced to writing, and signed by the parties, and no change was to be made not stated in the lease. No new written lease was required to avoid the Statute of Frauds. That question was not involved in the case. The writing was already made and signed, and the plaintiff was in possession thereunder, and the only question to be ascertained to bind the plaintiff was, did the defendant desire the plaintiff to remain, and make known that desire to the plaintiff? There was no agreement contained in the lease how that fact should be ascertained, whether orally or by writing. It might therefore be shown either way, the same as any other fact not required to be in writing. There was therefore no necessity for any formal tender of either lease or any written

through the formality of a tender of a lease, which they knew from Darling, his actions and conduct, would not be accepted if made. If the election was made as I have stated, then and forthwith the new term commenced, and the right of Darling to the value of the buildings was discharged.

(4) No subsequent surrender by Darling of the lease, even if it were accepted by Barbour & Rexford, after the new term commenced, could restore him to any right to recover the value of the building, as his surrender in such case must be considered as having been voluntary, and subject to all the rights of Mrs. Hoban which she would have had, had the full second term been carried out by both parties, with the exception that she would have been entitled to recover rent from the time of the acceptance of the surrender.

(5) The abandonment of the premises by Darling and the mere entry thereon, and even the use of them by the defendant, would not operate as a valid surrender of the lease in the second term.

(6) If there was an election to renew on May 1, 1882, and Darling refused a renewal, and refused to have anything to do with the premises thereafter, then the fact that thereafter defendant sought and obtained a tenant cannot affect defendant's position, as before stated, at the refusal of Darling to take or receive a renewal.

(7) That written authority was given to renew the lease with Darling when the telegram was sent.

(8) That the written notice of election by defendant, served on Darling on the evening of May 1st, was not served until it was received by Darling at 10 P. M. of that day.

(9) The plaintiff must prove that the building erected by him complies with the agreement in the lease,—that it is a complete building, and reasonably occupies the space between the other buildings on the lot and the Wayne County Savings Bank property,—or he cannot recover.

(10) Under the evidence in this case you must take it as established that the building erected by Darling occupies five inches of the Wayne County Savings Bank's land, in addition to the wall of the bank, and the defendant has no right or title to that wall, or the occupation of said five inches of ground.

notice. I think these views find support in the previous decisions of this Court. *Delashman v. Berry* 20 Mich. 292; *Curran v. Rogers* 35 Mich. 225; *Brand v. Frumveller* 32 Mich. 215; *Beller v. Robinson* 50 Mich. 264.

If a new lease had been required, I do not think it was necessary for defendant to make a tender of it before or at the time defendant made her election; but it was necessary for defendant to make her election on or before the last day of the term. This she did. The term did not end until the close of the first day of May, 1882. The defendant's notices were both given before that time, and plaintiff had announced his intention of abandoning the property, and refused to accept of the same for the second period. It is not entirely clear that if a tender of a new lease should have accompanied the notice of election, the plaintiff had not waived the same by what he said and did. It would have been an idle ceremony for the defendant to have tendered him a new lease to sign after he had said to her he would not sign it, or have anything more to do with the premises. The law never requires useless formalities under such circumstances, unless expressly required by the language of a statute or the agreement of the parties, or when the same is made the basis of some substantial proceeding in the attainment of justice.

The fourth assignment of error is the exception taken to the court's charging that the plaintiff was entitled to recover, and the only question for the jury to decide was the amount of plaintiff's damages. Under the construction of the lease herein given that charge was, of course, erroneous.

The fifth assignment of error reads as follows: "The court erred in charging the jury that if plaintiff put part of the building on the property of the Wayne County Savings Bank, that would only go to the amount of charges as for faulty construction." It is unnecessary to consider this assignment, inasmuch as no recovery can be had in this case for the value of the building, under the provisions of the lease, upon the facts as they appear upon this record. Were

such the case, however, I think the request would have been properly refused.

The judgment should be reversed and a new trial granted.

The other Justices concurred.