CLEVELAND, C., C. & ST. L. RY. CO. v. HIRSCH.

(Circuit Court of Appeals, Sixth Circuit.   May 6, 1913.)

No. 2,291.

**1.** COURTS (§§ 282, 284\*)—JURISDICTION OF FEDERAL COURTS—FEDERAL QUES-
TION—"CASE ARISING UNDER LAWS OF UNITED STATES."

A case arises under the Constitution or a law of the United States,
so 'as to be within the jurisdiction of a federal court, whenever its cor-
rect decision depends on the construction of either.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 826, 831;  Dec.
Dig. §§ 282, 284.\*]

**2.** CARRIERS (§ 32\*)—CONTRACT WITH SHIPPER—LEGALITY—DISCRIMINATION IN
RATES.

A contract by which an interstate railroad carrier leased ground to a
dealer in scrap iron and secondhand railroad material for a term of five
years, with privilege of renewal, at a rental not much exceeding one-tenth
of its actual rental value, in consideration of receiving the lessee's ship-
ments, both interstate and intrastate, at regular rates, with the under-
standing that the reduced rental was in fact a concession on freight
charges, is invalid, as giving the lessee a preference or advantage by al-
lowing a rebate or concession, in violation of Interstate Commerce Act
Feb. 4, 1887, c. 104, § 3, 24 Stat. 380 (U. S. Comp. St. 1901, p. 3155), and
Elkins Act Feb. 19, 1903, c. 708, § 1, 32 Stat. 847 (U. S. Comp. St. Supp.
1911, p. 1310).  It is also invalid as affecting intrastate shipments, under
1 Gen. Code Ohio, § 505 et seq., containing provisions similar to those of
the federal acts, and under the previous law of the state as settled by de-
cision.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 83–85;  Dec.
Dig. § 32.\*]

**8.** COURTS (§ 494\*)—JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION—
INCIDENTAL QUESTIONS.

Where a federal court has acquired jurisdiction of a suit for cancel-
lation of such contract as one arising under a federal law, it also has ju-
risdiction incidentally to determine the validity of the contract under
the law of the state, so far as it affects intrastate business.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1355–1371;  Dec.
Dig. § 494.\*

Jurisdiction in cases involving federal question, see notes to Bailey v.
Mosher, 11 C. C. A. 308;  Montana Ore-Purchasing Co. v. Boston & M.
C. C. & S. Min. Co., 35 C. C. A. 7;  Earnhart v. Switzler, 105 C. C. A.
262.]

**4.** CONTRACTS (§ 137\*)—VALIDITY—LEGALITY OF CONSIDERATION.

A contract is illegal where an essential and indivisible part of the
consideration is tainted with illegality.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 701–712;  Dec.
Dig. § 137.\*]

**5.** CONTRACTS (§ 138\*)—ILLEGALITY OF INSTRUMENT—RIGHT TO CANCELLATION
—PARTIES IN PARI DELICTO.

Complainant, a railroad company, leased premises to defendant for
a term of 5 years with privilege of an additional term of 20 years.  The
consideration for the lease was illegal, in that the rental reserved was less
than the actual rental value of the property;  the difference being a conces-
sion granted to defendant on account of shipments to be made on complain-
ant's road at schedule rates.  Under the law of Ohio the lease, being void,
created a tenancy from year to year only.  Prior to the expiration of the

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5-year term complainant repudiated the lease and commenced suit for its cancellation at the end of that term. *Held*, that it was not precluded from maintaining such suit by the fact that it was particeps criminis, the lease as to the renewal term being executory, and its continuance being contrary to public policy, but that it could not require an accounting for rental accrued prior to the commencement of the suit.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 681–700; Dec. Dig. § 138.*]

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Suit in equity by the Cleveland, Cincinnati, Chicago & St. Louis Railway Company against I. C. Hirsch. Decree for defendant, and complainant appeals. Reversed.

This was a suit in equity to set aside a lease under which Hirsch occupies certain of the company's land, and to require him to deliver up the premises and render an accounting. The basis of the suit was that the rent reserved was virtually nominal, and that the transaction was a subterfuge, which was intended to and did operate to give to Hirsch an undue preference, in violation of the Interstate Commerce Act. The averments of the bill may be summed up as follows:

The company is a common carrier engaged in interstate commerce, and as such is subject to the provisions of the act to regulate commerce, approved February 4, 1887, and its amendments; that in August, 1904, the company and Hirsch entered into a written agreement, whereby the company granted to Hirsch the right to use and occupy the land in question, comprising 6.58 acres, situated on its line of railroad in Hamilton county, Ohio, for a term of 5 years, beginning September 1, 1904, with the privilege of an additional term of 20 years. The company further agreed to, and did, inclose the land by a fence and construct such side tracks as were required to handle the business of Hirsch. As part of the consideration of the agreement, Hirsch was to give to the company all of his in and out bound freight business that could be handled by its lines at rates equal to those of any of the company's competitors (the company to be given a reasonable opportunity to meet any lower rate which might be offered by any competing road). Hirsch was also continually to prosecute on the premises the business only of dealing in scrap iron and secondhand railway materials. The rental in terms reserved was $275 per annum; and it is averred that the reasonable rental value of the land was $2,421.60 per annum; that "thereby it was agreed" that the company "should allow to said Hirsch, and Hirsch should receive" from the company, "in consideration of the said shipments and as a concession upon the freight charges to be paid by him, the sum by which said rental * * * was less than the fair rental value of the premises, being a sum upwards of $2,000 per annum, all of which was well known to the said Hirsch and intended by him to be the effect of said agreement." This excess in rental value greatly exceeded the revenue received from Hirsch for the years 1906, 1907, 1908, and 1909 on shipments, both intrastate and interstate (the latter comprising much the greater portion of the traffic); and it is further averred that the effect of the agreement was that, instead of the company receiving from Hirsch the regular published traffic rates for the transportation of his freight, it has in fact been paying to Hirsch a large bonus for shipping goods over its lines, and that Hirsch was so accorded an unreasonable preference and advantage over all other persons shipping over its lines, and that all other persons engaged in the same business in the city of Cincinnati were subjected to "an undue and unreasonable prejudice or disadvantage."

Decree sought declaring contract void, enjoining occupancy of property, requiring delivery of possession, and an accounting for reasonable rental from date of contract. The case was disposed of below upon an amended bill and demurrer. The demurrer was sustained, and the company appealed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Harmon, Colston, Goldsmith & Hoadly, of Cincinnati, Ohio (George Hoadly, of Cincinnati, Ohio, of counsel), for appellant.

Kramer & Bettman, of Cincinnati, Ohio (Gilbert Bettman, of Cincinnati, Ohio, of counsel), for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above).
[1] The first ground of the demurrer challenged the court's jurisdiction, but nothing was stated in the argument nor is anything found in the briefs on this subject. The company was incorporated under the laws of Ohio and Indiana, and is a citizen of each of the states, having its principal office and place of business in Cincinnati; and Hirsch is a citizen and resident of Hamilton county, Ohio, doing business there in the name of I. C. Hirsch Iron & Steel Rail Company. The only perceivable ground of jurisdiction is that the cause arises under a law of the United States. The bill shows that a substantial portion of the service intended, and in fact performed, under the contract in dispute, is of an interstate character; and although the amended bill does not in all respects strictly comply with the rule touching jurisdictional averment, yet we think enough is definitely stated, without resorting to argumentative inference (Shulthis v. McDougal, 225 U. S. 561, 569, 32 Sup. Ct. 704, 56 L. Ed. 1205), to show that the controversy arises in material part under the Interstate Commerce Act. Since a correct decision of the case must depend on the construction of portions of that law, jurisdiction of the court below sufficiently appears. The familiar rule laid down by Chief Justice Marshall (Cohens v. Virginia, 6 Wheat. at *379, 5 L. Ed. 257) furnishes the answer to this feature of the demurrer:

"A case in law or equity consists of the right of the one party, as well as of the other, and may truly be said to arise under the Constitution or a law of the United States, whenever its correct decision depends on the construction of either."

So in Tennessee v. Davis, 100 U. S. 257, 264 (25 L. Ed. 648), the court said:

"Cases arising under the laws of the United States are such as grow out of the legislation of Congress, whether they constitute the right or privilege, or claim or protection, or defense of the party, in whole or in part, by whom they are asserted."

See In re Lennon, 166 U. S. 548, 553, 17 Sup. Ct. 658, 41 L. Ed. 1110; Macon Grocery Company v. Atlantic Coast Line, 215 U. S. 501, 506, 30 Sup. Ct. 184, 54 L. Ed. 300; Second Employer's Liability Cases, 223 U. S. 1, 56, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Toledo, A. A. & N. M. Ry. Co. v. Pennsylvania Co. (C. C.) 54 Fed. 730, 732, 19 L. R. A. 387; Kalispell Lumber Co. v. Great Northern Ry. Co. (C. C.) 157 Fed. 847, 848; Lovell v. Newman & Son, 227 U. S. 420, 421, 33 Sup. Ct. 375, 57 L. Ed. ——.

[2] The only remaining ground of the demurrer is that complainant has not made such a case as entitles it to any relief in a court of equity. The first question naturally arising under this ground is whether the contract is valid or void. Analysis of the averments of the amended bill, as epitomized in the statement, plainly shows un-

der the demurrer that the railroad company agreed to turn over property to Hirsch for a period of 5 years, from September 1, 1904 (with the privilege of an additional term of 20 years), at a yearly rent of more than $2,000 less than its true rental value, in consideration of the rent reserved and of the privilege of carrying Hirsch's in and out bound freight at competitive rates. This excess rental value was much more in each of the years of 1906 to and including 1909 than the total annual revenue which the company derived in those years from traffic, both intrastate and interstate, shipped and received by Hirsch. It results that during those years the company not only furnished Hirsch with free transportation of his in and out bound freight, but also paid him additional sums in the form of rental value for the privilege of doing so. True, the traffic of Hirsch might in other years yield revenue greater than the excess rental value, but such contribution of the company would be none the less in amount or certain in its effect.

It is urged that this at last means nothing more than a "cheap lease," and that railroad companies are entitled to give inducements to business concerns to locate along the lines of the companies and so to increase the traffic. But the amended bill is still more specific. It is averred, in respect of this excess rental, that "thereby it was agreed" that the company should allow and Hirsch should receive such excess, not alone in consideration of Hirsch's shipments, but "as a concession upon the freight charges to be paid by him," and that this was "well known to  *  *  *  Hirsch and intended by him to be the effect of said agreement." Whether it was intended by these averments to charge that the company was less guilty than Hirsch as respects any violation of law in entering into the contract, and so augment the right to maintain the suit, is not made definite, and cannot be considered on the demurrer. Presumably the company knew the rental value of its property at the date of the contract, and the circumstances under which it was entered into, as well as at the time it made the averments; yet this is of no practical importance in determining the validity of the contract, since intent is imputed where the effect of the instrument is to violate the law. Whatever may be said of the contract on its face, it must be tested in connection with such facts as are well pleaded; and the averments concerning the excess in rental value are positive statements of fact.

So far as its validity is concerned, the contract cannot be effectively distinguished from that of the Pfaelzers, which was recently condemned in United States v. Union Stockyards, 226 U. S. 306, 308, 33 Sup. Ct. 83, 57 L. Ed. ——. That contract provided that if the Pfaelzers would construct a packing plant adjacent to the stockyards, and maintain and operate the plant for a period of 15 years, and either buy and use in their slaughtering business only such live stock as moved through the stockyards, or pay the same charges thereon as if the stock had passed into the stockyards and had been purchased there, they should receive $50,000 from the Stockyard Company, which under its charter and certain facts disclosed was held to be also a common carrier subject to the Interstate Commerce Law. Mr. Justice Day said (226 U. S. 308, 33 Sup. Ct. 89, 57 L. Ed. ——):

"In other words, this plant in effect may pay for the services of the Stockyard Company up to the sum of $50,000, with the bonus given to the Pfaelzers for the location of their plant in juxtaposition to the stockyards. * * * Any other company with which it has made no contract would be compelled to pay the full charge for the services rendered, without any rebate or concession. Another company might have a contract for a larger or smaller bonus, and thereby receive different treatment. Certainly as to the company which receives no such bonus there has been an undue advantage given to and an unlawful discrimination practiced in favor of Pfaelzer & Sons. * * * It is the object of the Interstate Commerce Law and the Elkins Act to prevent favoritism by any means or device whatsoever, and to prohibit practices which run counter to the purpose of the act to place all shippers upon equal terms."

See, also, Chicago & Alton R. R. Co. v. Kirby, 225 U. S. 155, 165, 166, 32 Sup. Ct. 648, 56 L. Ed. 1033; Chesapeake & Ohio Ry. Co. v. Standard Lumber Co., 174 Fed. 107, 115, 98 C. C. A. 81 (C. C. A. 4th Cir.); E. E. Taenzer & Co. v. Chicago, R. I. & P. Ry. Co.. 191 Fed. 543, 549, 112 C. C. A. 153 (C. C. A. 6th Cir.); Elwood Grain Co. v. St. Joseph & G. I. Ry. Co., 202 Fed. 845, 847 (C. C. A. 8th Cir.).

These decisions fairly illustrate the necessity to examine into the substance and effect of a transaction, regardless of the form it is given, when attempting to test its validity under the Interstate Commerce Law. Any endeavor to square a transaction with that law must take into account its evident purpose to treat all shippers of interstate commerce alike. The object of requiring tariffs to be published is not only to impose upon the carrier the duty of equality in service and rates, but also to enable shippers to protect themselves in that behalf. If a carrier of interstate freight permits a shipper to occupy any of its land, as here, as a means of either reducing or absorbing its published rates in such shipper's favor, the transaction is clearly violative of that provision of the Elkins Law which forbids the giving or receiving of "any rebate, concession, or discrimination, in respect to the transportation of any property in interstate * * * commerce," etc. (Act Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1911, p. 1310]), also as preserved by the Hepburn amendment (Act June 29, 1906, c. 3591, § 2, 34 Stat. 587, 588 [U. S. Comp. St. Supp. 1911, pp. 1291, 1292]), and likewise of section 3 of "An act to regulate commerce" prohibiting "any undue or unreasonable preference or advantage" (Act Feb. 4, 1887, c. 104, 24 Stat. 380 [U. S. Comp. Stat. 1901, p. 3155]). United States v. Union Stockyard, supra.

It is vain to say that this unduly deprives the carrier of any private right of property. Such a contention, and it is made here, fails to observe the direct connection between the use made of the property, through reduced rental, and the concession and discrimination made as to rates. The power of Congress under the commerce clause to denounce such a device as this for reducing rates is quite as clear as is its power to regulate the rates themselves. This in no wise militates against the right of a carrier to let or permit the use of its property at a reasonable rental. Whatever else may be said of the contract in dispute, it is denounced by the law, and, as to interstate freight, is void.

[3, 4] It is claimed, however, that, since intrastate traffic is involved under the contract, it is not enough simply to show that the contract

is violative of the Interstate Commerce Act. There are two answers to this: In the first place, the settled rule is that the courts regard a contract as illegal where an essential and indivisible part of its consideration is tainted with illegality. Armstrong v. Toler, 11 Wheat. 258, 271, 6 L. Ed. 468; E. E. Taenzer & Co. v. Chicago, R. I. & P. Ry. Co., supra, 191 Fed. 550, 112 C. C. A. 153; Widoe v. Webb, 20 Ohio St. 431, 435, 5 Am. Rep. 664; McQuade v. Rosecrans, 36 Ohio St. 442, 448. There is nothing in the present contract to indicate an intent to distinguish between the two classes of commerce, interstate and intrastate; the traffic, as well as the use of the premises, is treated as an entirety. But, independently of this, the contract is quite as certainly opposed to the statute law of Ohio as it is to that of Congress. If, then, we are right in holding that the court below acquired jurisdiction because the case arose under a law of the United States, it was open to the court below also to pass upon the effect of the local statute (Siler v. Louisville & Nashville R. R. Co., 213 U. S. 175, 191, 29 Sup. Ct. 451, 53 L. Ed. 753; Michigan Central R. R. Co. v. Vreeland, 227 U. S. 63, 64, 33 Sup. Ct. 192, 57 L. Ed. ——; Traction Co. v. Bridge Co., 202 Fed. 184 [C. C. A. 6th Cir.]; The Fair v. Kohler Die & Specialty Co., 228 U. S. 22, 25, 26, 33 Sup. Ct. 410, 57 L. Ed. ——), and so may be considered here.

True, the statute of Ohio is not referred to in the amended bill; but the facts that intrastate service was intended to be and is performed under the contract, and that the charges therefor are affected by it, are as distinctly averred as they are respecting interstate service and charges; and these averments we think justify the application of the substantive law of the state. Erie R. Co. v. White, 187 Fed. 556, 558, 109 C. C. A. 322 (C. C. A. 6th Cir.); Garrett v. Louisville & N. R. Co., 197 Fed. 715, 718, 117 C. C. A. 109 (C. C. A. 6th Cir.). Still it is said, and was decided below, that the federal courts have no power to determine any question as to intrastate traffic involved under the contract. It is enough to say of this question that it arose as an incident to jurisdiction acquired upon another and sufficient ground. Certainly a United States court has power to decide such a question, where, as in this case, the matter is incidentally and necessarily included in the issue of validity, or not, of a contract designed to accomplish a unitary purpose. It may, in passing, be observed of the Ohio statute, as it might be of some of the applicable acts of Congress, that the act was passed subsequent to the date of the contract; but the act makes no exception in favor of such contracts and the right to prohibit them was within the legislative power. Louisville & Nashville R. R. Co. v. Mottley, 219 U. S. 478, 479, 31 Sup. Ct. 265, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671; Elwood Grain Co. v. St. Joseph & G. I. Ry. Co., supra (C. C. A.) 202 Fed. 847.

Section 505 (1 Ohio General Code, 172) requires each railroad to file with the Public Service Commission schedules, which shall be open to public inspection, showing all rates for transportation of property and any service rendered in connection therewith. Section 507 contains substantially the same requirement as to joint rates respecting traffic carried over two or more connecting lines in the state. Section 510 provides:

"No railroad shall charge, demand, collect or receive a greater or less compensation for the transportation of * * * property, or for any service in connection therewith, than is specified in such printed schedules, including schedules of joint rates, as being then in force. The rates, fares and charges named therein shall be the lawful rates, fares and charges until they are changed as provided in this chapter."

Section 567 prohibits—

"undue or unreasonable preference or advantage to a particular person * * * or to any particular description of traffic, in any respect whatsoever. * * *"

Section 568 provides:

"Whoever, being a person, firm or corporation, knowingly accepts or receives a rebate, concession or discrimination in respect to transportation of property wholly within this state or for service in connection therewith, whereby such property by false billing, false classification, false weighing or other device, is transported at a less rate than that named in the published tariffs in force, or whereby any service or advantage is received other than that therein specified, shall be fined," etc.

In the absence of any decision of the Supreme Court of Ohio construing these statutes, and none has been cited or found, we are disposed to hold, for reasons already stated, that the annual concessions made by the company in favor of Hirsch in the form of rental value, not reserved, are prohibited by the Ohio statute. Moreover, the policy so declared by the law of Ohio is expressive of a policy long prevailing in the state as it has been interpreted by its Supreme Court. We refer to cases which differ in their facts from the facts in this case, but the underlying principles there announced are in substantial harmony with such statutory policy, and the common law as well. Scofield v. Railway Co., 43 Ohio St. 571, par. 3 of syl., 3 N. E. 907, 54 Am. Rep. 846; State ex rel. v. C., N. O. & T. P. Ry. Co., 47 Ohio St. 130, 139, 23 N. E. 928, 7 L. R. A. 319; also Baltimore & Ohio R. R. Co. v. Diamond Coal Co., 61 Ohio St. 242, 251, 55 N. E. 616, where Judge Shauck, in alluding to Scofield v. Railway Co., supra, in which a contract was declared unlawful because it provided for a discrimination in rates, said:

"It was there also held that the provisions of statutes and special charters prohibiting such discriminations are but declaratory of the common law."

We therefore hold that the contract in dispute is also void as respects intrastate commerce.

[5] However, it is earnestly contended that the railroad company is particeps criminis, and that under the maxim, "In pari delicto potior est conditio defendentis," a court of equity will not interfere. It must be conceded that the learned counsel states the general rule prevailing in equity and at law. St. Louis Railroad v. Terre Haute Railroad, 145 U. S. 393, 407, 12 Sup. Ct. 953, 36 L. Ed. 748. It need scarcely be said that a suit would not lie to enforce the present contract; but it does not follow that the complainant is not entitled to any relief whatever. While the case just cited is distinguishable from the present case, it affirms certain settled principles which we think are applicable here. That was a suit to set aside and cancel a lease granting a continuous term of 999 years. The lease and the property had been delivered 17 years before the suit was commenced,

and meanwhile no steps had been taken to repudiate the contract. The lease, although ultra vires, was regarded as a fully executed contract, and the court refused to interfere for that reason. 145 U. S. 408, 12 Sup. Ct. 953, 36 L. Ed. 748. It is to be observed that the instrument involved in the present case may be regarded as a lease within the decision in Thomas v. Railroad Co., 101 U. S. 78, 79, 25 L. Ed. 950; that its term was 5 years, with a privilege of an extension for 20 years more; and that complainant repudiated the lease at the threshold of the extension term. Besides, in the course of the opinion in St. Louis Railroad v. Terre Haute Railroad, supra, 145 U. S. 407, 12 Sup. Ct. 957, 36 L. Ed. 748, Justice Gray said:

"While an unlawful contract, the parties to which are in pari delicto, remains executory, its invalidity is a defense in a court of law; and a court of equity will order its cancellation only as an equitable mode of making that defense effectual, and when necessary for that purpose. Adams on Eq. 175. Consequently, it is well settled, at the present day, that a court of equity will not entertain jurisdiction to order an instrument to be delivered up and canceled, upon the ground of illegality appearing on its face, and when, therefore, there is no danger that the lapse of time may deprive the party to be charged upon it of his means of defense. Story, Eq. Jur. par. 700a, and cases cited; Simpson v. Howden, 3 Myl. & Cr. 97; Ayerst v. Jenkins, L. R. 16 Eq. 275, 282."

The illegality involved in the contract at bar does not appear on its face, but depends on external evidence as to facts and as to purpose, and this evidence might be lost by lapse of time. The contract is in substance and effect described in the amended bill, and a copy of it was filed as an exhibit. It purports to require Hirsch to pay a specified rent and the company to carry his freight at its published rates. Its vice consists in the excess in rental value averred, and the purpose of concealing and transposing this excess as before pointed out. It is most difficult to see how the company could decline to carry Hirsch's freight, for primarily it is in terms entitled to, and presumably it receives, full rates. The company hardly could offer its own contract, or the extraneous facts before alluded to, to excuse performance of its duties as a common carrier. Its loss arises collaterally out of Hirsch's use of its property at a nominal rental. It would seem, therefore, that this condition must continue, unless equitable relief can be granted.

Moreover, as stated, the company repudiated the contract at a time when its first term was about to expire and the additional term to commence. This suit was begun August 19, 1909, and the original term of 5 years was to expire September 1st following. The additional term was provided for in these words:

"The company hereby licenses and permits * * * the licensee [Hirsch] to use and occupy for a term of five (5) years, with the privilege of an additional term of twenty (20) years from September 1, 1904, to September 1, 1909."

It is averred in the amended bill that on January 28, 1909, Hirsch gave the company notice:

"That he elected to continue the said agreement in force for the further period of twenty (20) years, and to exercise the privilege of such further term contained in said agreement."

Confessedly, as respects a valid agreement, a notice like this, under a covenant such as the one quoted, would be sufficient to entitle the

tenant in possession to the enjoyment of the additional term (Ferguson v. Jackson, 180 Mass. 557, 558, 62 N. E. 965; Darling v. Hoban, 53 Mich. 599, 602, 19 N. W. 545; Caley v. Thornquist, 89 Minn. 348, 350, 94 N. W. 1084; Kentucky Lumber Co. v. Newell, 105 S. W. 972, 32 Ky. Law Rep. 396, 398—Court of Appeals); still according to the terms of the contract, and we think the better rule, the privilege could not have created in Hirsch anything more than a present demise to take effect at the expiration of the first term (De Friest v. Bradley, 192 Mass. 346, 351, 78 N. E. 467). Apart from this, we are considering a void agreement; it was entered into in Ohio, concerning the use of land there situated, and the rule of the Supreme Court of the state respecting an entry and the payment of rent under a lease for a term of years at an annual rent, which for any reason is void, "creates a tenancy from year to year upon the terms of the lease, except as to its duration." Railroad Co. v. West, 57 Ohio St. 161, 165, 49 N. E. 344. See, also, 1 Wash. Real Prop. (6th Ed.) §§ 823, 824, p. 508. The company's disavowal of the contract occurred 12 days before the expiration of the term then existing (and 13 days before the time fixed for the commencement of a new term), no matter whether Hirsch's rights be considered with reference to the contract or his tenancy from year to year. If the company had retracted after its execution and delivery of the contract, and without delivering possession of the premises, the decision of this court in McCutcheon v. Merz Capsule Co., 71 Fed. 787, 19 C. C. A. 108, 31 L. R. A. 415, would have been a direct authority entitling the company to relief. As pointed out in the opinion of the present Mr. Justice Lurton, when distinguishing that case from St. Louis R. R. v. Terre Haute R. R., Lord Selborne, in Ayerst v. Jenkins, L. R. 16 Eq. 275, 283, said:

"When the immediate and direct effect of an estoppel in equity against relief to a particular plaintiff might be to effectuate an unlawful action, or to defeat a legal prohibition, or to protect a fraud, such an estoppel may well be regarded as against public policy."

Apparently the portion of the decision in McCutcheon v. Merz Capsule Co., which was in favor of that company, was based upon the principle thus announced by the Lord Chancellor. This principle is laid down also in Parkersburg v. Brown, 106 U. S. 487, 503, 1 Sup. Ct. 442, 27 L. Ed. 238. There is a distinction, however, between the McCutcheon Case and the present case that must not be overlooked. The Merz Capsule Company entered into the illegal agreement there involved and delivered a deed conveying its property, but it did not surrender possession and it distinctly repudiated the agreement. Its grantee, the United States Capsule Company, sought forcibly to obtain possession of the property. This court affirmed the decree below, which declared the illegality of the agreement and the deed, but the court restrained appellants from interfering with the title or possession of appellee under color of such agreement and deed. At the close of the opinion Judge Lurton said (71 Fed. 796, 19 C. C. A. 117, 31 L. R. A. 415):

"Under all these circumstances, to hold that the complainant is estopped to rely upon the illegality of the agreement and conveyance to which it was a party would be to effectuate an unexecuted unlawful object, and aid in the defeat of a legal prohibition. The door of this court should not be closed

against one seeking to extricate himself from an unlawful connection, provided relief is sought without delay, and before the contract is executed, or other persons have irrevocably acted in reliance upon its supposed legality."

Judge Story said in his work on Equity Jurisprudence (section 298, p. 303, 13th Ed.):

"Relief is not granted where both parties are truly in pari delicto, except in cases where public policy would thereby be promoted."

Again in the same section, at pages 301, 302:

"But in cases where the agreements or other transactions are repudiated on account of their being against public policy, the circumstance that the relief is asked by a party who is particeps criminis is not in equity material. The reason is that the public interest requires that relief should be given, and it is given to the public through the party."

See 2 Pomeroy's Eq. Jur. (3d Ed.) § 941, and cases cited.

But in view of the disapproval of a class of cases cited and others distinguished in the decision of St. Louis Railroad v. Terre Haute Railroad, 145 U. S. 406, 12 Sup. Ct. 953, 36 L. Ed. 748, relief only to a limited extent can be granted in the present case, and that is allowable, if at all, because (1) the new term had not commenced to run, either under the contractual privilege of extension or the yearly tenancy, at the time this suit was brought, and so the contract as to that period was executory; and (2) the ground of illegality of the contract does not appear on its face, and the evidence thereof might be lost by lapse of time. We are unable to see why either party could not have retracted at the threshold of the new term, since he plainly could have done so at the beginning of the original term. The opening of the new term, as well as of the original, would seem to have been an appropriate locus pœnitentiæ. It does not appear that any rights of third persons had intervened, and, assuming that both parties were equally in the wrong, it is carrying the rule (in pari delicto, etc.) beyond the reason for its existence to refuse, at such a time and under such a contract as this, either to declare the law or grant purely negative relief. Not to do this would, as respects the new term in the instant case, bring to pass the very thing that the law expressly forbids. The granting of such relief is not to enforce the contract; it is to prevent its renewal. The rule just alluded to is bottomed on the idea that the law is best subserved by leaving the parties where it finds them (1 Story, Eq. Jur. [13th Ed.] § 298, p. 303; McMullen v. Hoffmann, 174 U. S. 639, 669, 670, 19 Sup. Ct. 839, 43 L. Ed. 1117); but obviously this reason ceases wherever such a course would in practical result be to effectuate, if not to sanction, the forbidden act. Indeed, as already sufficiently appears, this constitutes an exception to the rule; and we apply it to the executory portion of the contract in dispute, because the reason of the exception seems to us to be as pertinent to either of two separable terms as it is to a single term under a lease. And if it were necessary to show anything more concerning the principle applicable to executory contracts, we might add to what was said in McCutcheon v. Merz Capsule Co., Justice Gray's recognition of the principle in St. Louis Railroad v. Terre Haute Railroad, 145 U. S. 407, 12 Sup. Ct. 957, 36 L. Ed. 748:

"If the contract is illegal, affirmative relief against it will not be granted, at law or in equity, *unless the contract remains executory.*"

See, also, Spring Co. v. Knowlton, 103 U. S. 49, 58 to 60, 26 L. Ed. 347; Block v. Darling, 140 U. S. 234, 239, 11 Sup. Ct. 832, 35 L. Ed. 476. We are not unmindful of the possession in defendant; but that does not seem sufficient to entitle him to demand a new term under a void lease any more than under a yearly tenancy. The case upon this record is so far analogous to McCutcheon v. Merz Capsule Co. as to warrant the relief we accord.

We conclude, upon the facts admitted by the demurrer, that Hirsch is not entitled under this contract to hold or use the premises, and that, subject to the right of removal of such improvements and other property as he may have on the premises, he should be enjoined from further use and occupation thereof under color of the contract. Nor can the company have an accounting for rent claimed to have accrued prior to the commencement of the suit. Whatever rental value was given to Hirsch as a concession upon freight rates or otherwise must be treated the same as if its equivalent had been paid to Hirsch in money; and it is not claimed, as plainly it could not be, that the aid of a court could be invoked to recover cash payments of that character. Equitable Life Soc. v. Wetherill, 127 Fed. 947, 951, 62 C. C. A. 579. As respects the excess in rental value over the rent reserved, the contract must be regarded as acquiesced in and fully performed, at least up to the time of the beginning of the suit. But if it should appear that since then Hirsch has occupied the premises, and that the company has not received any rental therefor, or otherwise countenanced the contract, it should be accorded an accounting for the reasonable rental value of the premises from that time until Hirsch shall cease to use and occupy them. This would not be to enforce the contract; it would be to prevent defendant from receiving the benefits of the use of the property without paying for them. Parkersburg v. Brown, supra; Standard Savings & Loan Ass'n v. Aldrich, 163 Fed. 216, 221, 89 C. C. A. 646, 20 L. R. A. (N. S.) 393 (C. C. A. 6th Cir.).

The decree below is reversed, with costs, and the cause is remanded, with instructions to overrule the demurrer, and for further proceedings in conformity with this opinion.