JOSEPH FREIHEIT *vs* WILLIAM BROCH.

Third Judicial District, Bridgeport, October Term, 1922.
WHEELER, C. J., CURTIS, BURPEE, KEELER and WEBB, Js.

The covenant of renewal in a lease differs from an option or privilege of extension, or agreement for further occupation: the former does not become effective until the new lease is delivered, the latter is a part of the original lease and requires no new instrument.

Whether a clause in a lease is a covenant of renewal or merely an agreement for an extension of the existing lease, depends upon the intention of the parties; and the use of the word "renewal" though importing the giving of a new lease like the old one, does not necessarily indicate its use in such strict and technical sense, for the entire lease may determine otherwise.

Unless otherwise provided in the lease, a lessee having the right of renewal must give notice of his desire to renew prior to the termination of the original term.

Under a lease providing for its renewal upon giving thirty days' notice, the lessee need only give the specified notice of his election to renew, and the refusal of the lessor to comply will be inferred from his failure to act within a reasonable time, or by his conveyance of the premises, thus making his compliance impossible.

Upon the lessor's breach of his covenant to renew, the lessee may elect

between the remedy of specific performance, and that of damages; the former becomes unavailable where the lessor has conveyed away his title, but his liability for damages remains.

In this case the lessee gave due notice of his election to renew, but the lessor did not renew the lease nor did he expressly refuse to do so within a reasonable time, but sold the leased premises to purchasers who had notice of these facts. *Held:—*

1. That upon the giving of the notice the lessee's right to a renewal arose without other or further demand, and that from the lessor's failure to give a new lease within a reasonable time thereafter, the law would infer a refusal to renew and a consequent breach of his covenant; and, furthermore, that the lessor's sale of the premises was in law a refusal to renew.

2. That upon such refusal the lessee might sue either for a specific performance, or for damages; such damages being nominal so long as he was not dispossessed, but being measured, on and after eviction, by the difference between the rental value and the actual value of the lease.

Upon making oral demand for a new lease prior to the expiration of the first, the lessee was told by the lessor that a new lease was unnecessary, as his continued possession and payment at the increased rate was sufficient. *Held* that his acquiescence in this statement was not a waiver of his claim to a new lease, especially as shortly thereafter he gave the required notice of his election to renew and thus made manifest his intention to stand upon his right to such new lease.

Whether the purchasers were also liable for the lessor's breach of his covenant of renewal, *quære.*

Argued October 26th—decided November 27th, 1922.

ACTION to recover damages for breach of covenant to renew a lease, brought to the Superior Court in Fairfield County where a demurrer to the substituted complaint was sustained in part (*Haines, J.*) and the remaining issues were tried to the court, *Wolfe, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff. *Error; judgment to be entered for plaintiff for $3,600.*

*Carl Foster,* for the appellant (plaintiff).

*William H. Comley,* for the appellee (defendant).

WHEELER, C. J.   The defendant leased in writing certain premises to the plaintiff, and one of the covenants of the lease provided: "And the said party of the first part [William Broch, defendant] covenants with said party of the second part [Joseph Freiheit, plaintiff] that at the expiration of said lease that he will renew the same with said party of the second part for a period of five (5) years . . .; provided that said party of the second part shall give thirty (30) days notice, in writing, to said party of the first part of his intention to take said five (5) years renewal of said lease." Prior to the expiration of the lease the plaintiff orally requested defendant to give him a new lease of the premises, but defendant stated that in his opinion it was unnecessary to execute any new written lease but that it would be sufficient if plaintiff remained in possession and paid the increased rent called for by the terms of the lease. The defendant acted in good faith in making this statement and the plaintiff acquiesced in it. Thereafter, and prior to the termination of the lease, the plaintiff gave to the defendant notice, in accordance with the terms of the lease, of his desire to renew it. The plaintiff did not request the defendant to give him a written lease prior to February 1st, 1919, except as above stated. In September, 1919, the defendant sold the premises. The purchasers before purchasing knew of the lease and of the covenant of renewal therein, and that the plaintiff was in possession of the premises and was paying the increased rental called for under the renewal. The plaintiff never made demand upon the purchasers, for such renewal lease. On October 23d, 1919, the purchasers brought an action of summary process against the plaintiff and recovered a judgment ousting him from the possession of the premises, and plaintiff on February 1st, 1920, removed therefrom without wait-

ing for execution to be served upon him. The differ-
ence between the rent reserved in the lease for the re-
newal period for four years from and after February
1st, 1920, and the value of the leasehold for this period
was $3,600.

Whether a clause in a lease is a covenant of renewal
or an agreement for an extension, depends upon the
intention of the parties to the lease, and the use of the
word "renewal," although it imports the giving a new
lease like the old one (*Cunningham* v. *Pattee*, 99 Mass.
248, 252), does not necessarily indicate that it is used
in this strict and technical sense; the entire lease may
determine otherwise. Note, L. R. A. 1916E, p. 1238.
The language of this clause leaves no room for a differing
view; it is a covenant of renewal, and as such could not
become effective until the new lease was delivered;
in this respect it is unlike an option or privilege of ex-
tension, or an agreement for further occupation, which
is a part of the original lease and hence requires no new
lease. *City Coal Co.* v. *Marcus*, 95 Conn. 454, 111 Atl.
857. Underlying the entire argument of the plaintiff, is
his broad claim that when he gave the notice as provided
for in the lease, he fulfilled his entire duty under his
agreement and was thereupon entitled to the new lease.
On the other hand, the defendant insists that the plain-
tiff was required to make demand for the new lease,
which the defendant must have refused, before the
plaintiff could enforce his demand for the new lease,
and that there has been no refusal and no further de-
mand. The defendant covenanted that he would re-
new the lease upon certain terms if the plaintiff would
give a specified written notice of his intention to take
the renewal. The plaintiff gave the notice as required.
He could not force the defendant to either declare his
refusal, or comply with the demand conveyed in his
notice. No more could he force this refusal if he made

another demand. His agreement did not require that he make such attempt, and the law will not require so futile a course. From the fact that the defendant failed to give the lease for an unreasonable time after the lessee had fulfilled his right to a renewal, the law will infer defendant's refusal after such time. Upon the giving of this notice plaintiff's right to the renewal of his lease arose, and since defendant then made no express refusal he could within a reasonable time thereafter enforce his right by process of law. In an equitable action to secure the renewal of a lease containing a covenant of renewal, we held that "the plaintiff's right to the renewal lease accrued on his demand under the renewal agreement. He was at liberty at any time thereafter, upon the refusal to renew, to enforce his right by process of law." *Karn* v. *DiLorenzo*, 95 Conn. 267, 271, 111 Atl. 195. The case at bar differs from this case in the fact that no express refusal was made, but the law, as we have said, infers a refusal from the failure to act upon the demand within a reasonable time. In *Giering* v. *Hartford Theological Seminary*, 86 Conn. 208, 213, 84 Atl. 930, we thus expressed our view of the effect of compliance with the conditions imposed upon a tenant by a renewal clause: "'The agreement for renewal conveyed no right nor interest in the premises beyond the term. At most it gave the defendant a right, if he complied with the conditions upon which the right was based, to obtain a lease for two years more, but he did not in fact obtain such a lease.'" In *Renoud* v. *Daskam*, 34 Conn. 512, 517, a bill in equity was filed to compel the execution of a lease containing a clause that if thereto desired by Renoud (the lessee), Daskam (the lessor) would make and extend to the said Renoud a lease for the further term of five years. We held that the bill would not lie, assigning as one reason that "the

petitioner neglected to express his desire for another term on or before the expiration of the five years, and we think cannot now require that another lease should be given." This decision has been cited in other jurisdictions to sustain the position we take herein, for example, *Darling* v. *Hoban*, 53 Mich. 599, 19 N. W. 545. These decisions lead to these conclusions. The covenant to renew is an executory contract which gives to the lessee the right to renew upon compliance with the terms of his election as specified in the renewal clause, or if there be none, upon giving notice prior to the termination of the lease of his desire to renew. Upon such compliance, or such indication of his desire to renew, the contract of renewal as to the lessee becomes an executed contract. The authorities are in accord with this position. In *Andrews* v. *Marshall Creamery Co.*, 118 Iowa, 595, 598, 92 N. W. 706, the court stated the effect of a clause in a lease "with the privilege of renewal for four years longer," in these terms: "But an agreement for an option of renewal would seem to imply that the parties contemplate some affirmative act by way of the creation of an additional term. It is no doubt true that this affirmative act may be something different from, and less than, the execution of a new lease; for, when the tenant has indicated affirmatively the election to avail himself of the privilege of renewal, he has done all that is necessary to create a renewal, for the conditions under which the new term is to be enjoyed will be the same as those under which the first term was enjoyed, save as to the condition which provides for the renewal." *Kaufmann* v. *Liggett*, 209 Pa. St. 87, 91, 58 Atl. 129; *Darling* v. *Hoban*, 53 Mich. 599, 19 N. W. 545; Note, 29 L. R. A. (N. S.) 175; 1 Taylor on Landlord & Tenant (8th Ed.) p. 385.

The defendant concedes that upon the facts of

record the plaintiff could have insisted upon a renewal in writing, but argues that since the plaintiff has not met the burden of proving a refusal to renew by him, the action against him must fail. We have already met this contention. The defendant further contends that the validity of the judgment against the plaintiff depends upon whether the sale by him to purchasers with notice, amounted, as matter of law, to proof of refusal to renew. The validity of this judgment does not depend upon an affirmative decision upon this question. If it did, no other decision, in our view, would be permissible. Had the defendant up to the time of the sale not indicated his refusal to renew, we know of no act of his which would more effectively indicate his purpose to refuse to renew the new lease than his conveyance of the subject of the lease, thus placing it beyond his power to thereafter renew. The trial court held in its memorandum of decision that the plaintiff, having given due notice to the defendant of his desire to renew the lease, was in a position to require its renewal, but by his acquiescence in the belief of the defendant that no new lease was required, and his neglect to pursue his right to a renewal, he was not entitled to recover damages from defendant for his failure to give such renewal. The defendant is unable to support the judgment upon this ground, and dismisses the fifth assignment of error, which is a quotation from this part of the memorandum of decision of the trial court, in these words: "It seems to us to be a sufficient answer to this assignment of error that it ignores the issues presented in this case. The issues present no question of laches or neglect to pursue a proper remedy." The only vital issue in the case, the defendant says, is that of the refusal to renew, which the court has found against the plaintiff.

The defendant does claim that the arrangement

between himself and the plaintiff constituted a waiver on the part of the plaintiff of his right to enforce the renewal lease, or to recover damages from the defendant after he had parted with the title and was incapable of performing his obligation to renew. This was all of the so-called arrangement: Prior to the expiration of the lease the plaintiff orally demanded a new lease and defendant stated to him that it was not necessary, that his continued possession and payment of the increased rental called for by the lease would be sufficient, and the plaintiff acquiesced in defendant's suggestion. If this were all that had occurred between these parties, and the term of the lease had expired before the written notice had been given, it would furnish strong ground for the interposition of a court of equity to prevent a forfeiture of the lease. But it is not all, for thereafter, and prior to the termination of the lease, the plaintiff duly gave the written notice as required by the lease. If his acquiescence in the defendant's suggestion could be construed to be a waiver for the time being, this notice was a declaration that such acquiescence was at an end and that the plaintiff stood upon his right to a renewal under the terms of the lease. The defendant fully understood this, for we find his attorney thereupon proposing to the attorney for the plaintiff a plan for a renewal for two years instead of the five years provided for in the lease. It would be highly inequitable to sustain the defendant lessor's claim that the plaintiff by not pressing his demand for a new lease and acquiescing for the time being in the defendant's statement that a new written lease was unnecessary, had waived his right to the lease although he had thereafter completed the steps necessary to make his election to renew good. The defendant did have a reasonable time in which to determine upon his course after plaintiff's election, and from this

time on his refusal to renew was a fact of necessary inference, and his breach of his covenant of renewal an accepted fact. Thereupon the plaintiff might, by a bill in equity, have compelled the defendant to renew the lease. The subsequent conveyance destroyed plaintiff's right to compel defendant to renew, for performance by him had by his act been rendered impossible. So long as the plaintiff remained in possession of the premises he suffered no damage. When he was dispossessed he suffered all the damage which arose from the loss of the new lease to which he was entitled. The law measures this loss by the difference between the rental value and the actual value of the lease. We recognized the remedy by a suit in equity to secure the specific performance of a contract of renewal, in *Nutmeg Park Driving Corporation* v. *Fisk*, 81 Conn. 463, 71 Atl. 499, and *Renoud* v. *Daskam*, 34 Conn. 512. The lessee has, when the lessor has breached the covenant to renew, an option of remedies, specific performance, or that of damages. The lessor can never relieve himself of the obligations arising out of his breach until he has either fulfilled his contract or paid the damages accruing from the breach. His conveyance of title makes the equitable remedy unavailable against him, but the action for damages remains. *Riley* v. *Hale*, 158 Mass 240, 33 N. E. 491. In *Arnot* v. *Alexander*, 44 Mo. 25, 29, the lessee having complied with the conditions contained in the covenant for renewal, the court said: "It is in every way reasonable and just that the lessee should elect his remedy, and either take damages at law or have a specific performance in equity." See, also, *McClintock* v. *Joyner*, 77 Miss. 678; 2 Wood on Landlord & Tenant (2d Ed.) § 413; *Riley* v. *Hale, supra;* 1 Underhill on Landlord & Tenant, § 256. In *Dodds* v. *Hakes*, 114 N. Y. 260, 265, 21 N. E. 398, the measure of damages for lessor's breach of a covenant

of renewal is stated to be the "amount represented by the excess of the actual rental value over the rent reserved in the lease." *Trull* v. *Granger,* 8 N. Y. 115. And in *Riley* v. *Hale, supra,* the court held that where a lessor puts it out of his power to deliver possession to the lessee, if no rent has been paid the lessor is liable for the difference between the agreed rental and the actual rental value.

The defendant makes another suggestion, supporting it by the apparent conclusion of the trial court, that since the covenant of renewal runs with the land after conveyance, the only action for its breach must lie against the purchasers and not himself. The defendant lessor cannot escape his own liability because the purchasers are also liable, since his delict occurred before the conveyance and the measure of his liability in damages immediately upon the act of conveyance. We have no occasion to determine in this action the question of the liability of the purchasers for defendant's breach of his covenant of renewal. Numerous authorities would seem to hold them liable. 1 Taylor on Landlord & Tenant (8th Ed.) 385; Note, Anno. Cases 1915D 253; 16 Ruling Case Law, § 406, p. 900; *Blount* v. *Connolly,* 110 Mo. App. 603, 85 S. W. 605.

There is error, the judgment is reversed and the Superior Court directed to enter its judgment for the plaintiff in the sum of $3,600.

In this opinion the other judges concurred.